### WESTERN MARYLAND RY. CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2837.

George P. Bagby and Eugene S. Williams, both of Baltimore, Md., for petitioner.

John Vaughan Groner, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Chester A. Gwinn and Humphreys & Gwinn, all of Washington, D. C., amici curiæ.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

PARKER, Circuit Judge. This is a petition by the Western Maryland Railway Company to review a decision of the Board of Tax Appeals. The point involved is the right of the railway company to deduct in its income returns for the years 1918 and 1919 an amortized portion of the bond discount arising upon the sale of bonds by *The* Western Maryland Railway Company, its predecessor in the ownership of its railroad

property. The Board of Tax Appeals based its denial of the deduction primarily upon the fact that a new corporation had been created as a result of the consolidation of The Western Maryland Railway Company with its various subsidiary corporations in 1917, and that this new corporation had assumed the payment of the bonded indebtedness. It reasoned that the new corporation, which took over the property of the old and assumed its debts, had paid no discount on the bonds and consequently was not entitled to amortize same.

The facts as to the bonded indebtedness and the discount are that between April, 1904, and August, 1911, the corporation which was the predecessor of the petitioner, the Western Maryland Railway Company, issued and sold $46,633,000 of first mortgage 4 per cent. bonds, dated October 1, 1902, and maturing October 1, 1952, at a discount of $3,638,451.67. This discount was set up on the books of the company as of January 1, 1910, and the annual proportion thereof, amounting to $80,796.24, was charged off each year thereafter.

The facts with regard to the reorganization are that the corporation which held the railroad property at that time, *The* Western Maryland Railway Company, owned all of the stock in seven subsidiary corporations whose property it operated in all respects as its own, keeping but one set of books and making reports to the Interstate Commerce Commission just as though all of the properties of all of the corporations were owned and operated by it as a single system. At that time it had outstanding $50,000,000 common and $10,000,000 preferred stock, and owed, in addition to the bonded indebtedness to which we have referred, notes aggregating $17,742,050, most of which were held by its stockholders. The railway company and its subsidiaries were consolidated on February 17, 1917, under the name of Western Maryland Railway Company, pursuant to article 23, §§ 33 to 35, of the Maryland Code, the inclusion of those of the subsidiaries which had been organized under the laws of Pennsylvania being effected pursuant to the Acts of March 24, 1865, P. L. 49 (Pa. St. 1920, §§ 18586, 18588, 18589, 18592, 18593–18596), and April 10, 1869, P. L. 24 (Pa. St. 1920, § 18612), of that state. Under the reorganization, the common stock of the new company was exchanged share for share for the common stock of the old, second preferred of the new was exchanged share for share for the preferred of the old, and first preferred to the amount of $17,742,050 was issued and

given in exchange for the notes held against the old company. The bonds which constituted a lien upon the property were not affected by the reorganization, but their payment was assumed by the new corporation, which assumed all of the obligations of the old corporation and its subsidiaries and took over all of their assets. Among the assets, which were shown by the books of the old corporation and which were taken over by petitioner upon the reorganization, was the amount set up on account of discount in the sale of the bonds.

Not only do the books of petitioner show the bond discount, but it also appears that petitioner is required by the Interstate Commerce Commission, under the latter's classification of income, profit, and loss, and general balance sheet accounts, prescribed in accordance with section 20 of the Interstate Commerce Act (49 USCA § 20), to carry on its general balance sheet the unextinguished discount on the bonds in question and to amortize same by a charge against income for the remaining life of the bonds.

Two questions are presented by the petition: (1) Whether, where bonds are sold at a discount, such discount may be amortized, for income tax purposes, over the life of the bonds, by deducting the annual proportion thereof from gross income for each year; and (2) if so, whether the right to deduct the discount was lost in this case by reason of the reorganization and the taking over of the assets and liabilities by the consolidated company.

On the first question it appears that the books of the railway company are kept upon the accrual basis, and section 234(a) (2) of the Revenue Act of 1918 provides for the deduction of all interest paid *or accrued* within the taxable year on its indebtedness. 40 Stat. 1077. Bond discount is in reality additional interest payable upon the maturity of the bonds, and a proportionate part of it accrues each year and should be treated as interest paid or accrued on the bonds for that year. This is expressly provided for in the Regulations of the Commissioner of Internal Revenue. Article 544(3) (a) of these regulations reads in part as follows: "If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds."

In article 563 it is provided: "If it sells its bonds at a discount, the amount of such discount is treated in the same way as interest paid. * * *"

And article 848 provides: "Discount al-

lowed on the sale of bonds is in effect an advance on account of interest, so that the effective rate of interest in such a case is equal to the sum of the nominal rate plus the rate necessary to amortize the discount over the life of the bonds."

These regulations of the Commissioner are in accord with the requirements of the Interstate Commerce Commission, and have recently been approved by the Board of Tax Appeals in the case of Chicago, Rock Island & Pacific Railway Co. v. Commissioner of Internal Revenue, 13 B. T. A. 988. They are also in accord with the practice laid down by approved accounting authorities. See Accounting Practice and Procedure, by Arthur Lowes Dickinson (1919) pp. 66, 134–155; Corporation Accounting, by R. J. Bennett (1917) pp. 269–272; Modern Accounting, Its Principles and Some of its Problems, by Henry Rand Hatfield (1913) pp. 187–189; Outline of Accounting, by William S. Krebs (1923) pp. 434, 435; Accounting, Theory & Practice, by Roy B. Kester (1918) pp. 367, 368; Accounts in Theory and Practice, by Earl A. Saliers (1920) pp. 168–170. In the Chicago, Rock Island & Pacific Railway Company Case, the Board of Tax Appeals went into the matter very fully, and laid down what we think is the correct rule in such matters in the following language:

"Whenever a corporation contemplates issuing long-term securities, three methods present themselves: Shall the bonds carry the market rate of interest and be issued at par, or shall they carry a greater rate than the market rate and be sold at a premium, or shall they carry a rate less than the market rate and be sold at a discount? Which of these methods should be pursued is determined by the present needs and the future prospects of the company, but it matters not which plan is adopted, other things being equal, the rate of interest finally paid will be the market and not the contract rate. The true income of the company can be reflected only when the discount is spread over the life of the bonds. The most material element in determining the contract rate of interest, that is, whether the bonds shall be sold at par or at a premium or discount, is time. Thus no one would consider the proposition that he pay a premium for bonds payable at once nor would one issue bonds at a discount which are due and collectible the day they are issued. Since time is such a vital element in determining premium and discount, it is difficult to perceive why this element should not be taken into consideration in determining taxable income—why time should not be used as a divisor in order to allocate to each period of time that part of the discount which is greater or less by reason of time. * * * We are of opinion that in an economic and accounting sense, the discounts, herein involved, are in the nature of deferred interest, that they may be accrued and that the proper proportionate part applicable to each taxable year involved may be taken as a deduction from gross income in such year, and that this concept is not in conflict but rather in harmony with the provisions of the Revenue Acts of 1916 and 1918."

■ Cases apparently in conflict with this decision were reviewed by the Board and distinguished, and upon careful examination are seen not to be in conflict. Thus the case of Commissioner of Internal Revenue v. Old Colony R. R. (C. C. A. 1st) 26 F.(2d) 408, dealt with the amortization of a premium on bonds issued prior to the adoption of the income tax amendment; and it was held that a tax could not be imposed upon a premium received prior to the adoption of the amendment which gave Congress the power to tax. So. Pac. R. Co. v. Muenter (C. C. A. 9th) 260 F. 837, Baldwin Locomotive Works v. McCoach (C. C. A. 3d) 221 F. 59, and C. & A. R. R. Co. v. U. S., 53 Ct. Cl. 41, were cases arising under the corporation excise tax law, which required returns on the cash receipts and disbursements basis, and allowed deduction only of interest which had been paid, not that which had *accrued*, as does the Revenue Act of 1918 (40 Stat. 1057). After careful examination of these cases, we agree with the Board that, where bonds are sold at a discount, it is proper for income tax purposes that such discount be amortized over the life of the bonds and that a proportionate part thereof be deducted each year as accrued interest from gross income.

■■ We come then to the second question in the case: Has the right to deduct the amortized portion of the discount been lost by reason of the reorganization of the corporation that sold the bonds and the taking over of its assets and liabilities by the consolidated company? We think not. In the first place, it is perfectly clear that, although there has been a reorganization and although the consolidated corporation is a distinct legal entity from those whose places it has taken, nevertheless, in all of its essential relationships, it occupies exactly the same position which they occupied. Its management is the same, its assets are the same, its stockholders are the same, and its obligations are the same, except that the floating indebtedness of the old corporation has been taken

up by the first preferred stock of the new, a change which might have been effected by the old corporation without reorganization, and which manifestly can have no bearing upon the matter of bond discount. In other words, the consolidated corporation has stepped into the place of the corporation which issued the bonds, and occupies the same relationship towards them that it occupied. It has received no consideration for its agreement to pay them except the assets of the old corporation which have been transferred to it. It has the same property as the old corporation, owes the same bonded debt, and is bound to pay it in the same way. The Interstate Commerce Commission requires that the unextinguished discount be carried on the balance sheet of the company and that same be amortized by charge against income for the remaining life of the bonds, just as though no reorganization had taken place;' and, if the deduction is to be allowed as a basis for rate making and for determining the rights of the government under the recapture clause of the Transportation Act, there is no reason why it should not be allowed in determining the basis of taxation also. After all, while there is a technical legal difference between the old and the new corporations, they are the same as a practical matter, both holding the same property and representing the same ownership, and it is a settled principle that "courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." Chicago, Milwaukee & St. Paul R. Co. v. Minneapolis Civic Ass'n, 247 U. S. 490, 501, 38 S. Ct. 553, 557 (62 L. Ed. 1229); Southern Pac. Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142; Gulf Oil Corporation v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35; 63 L. Ed. 133.

The rule just stated is of peculiar importance in tax cases; for, unless the courts are very careful to regard substance and not form in matters of taxation, there is grave danger on the one hand that the provisions of the tax laws will be evaded through technicalities and on the other that they will work unreasonable and unnecessary hardship on the taxpayer. It is instructive to note the many tax cases decided in recent years in which the courts have not hesitated to ignore corporate forms, and to decide the questions involved in the light of what the parties have actually done, rather than on the basis of the forms in which they have clothed their transactions. See Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Gulf Oil Corp. v. Lewellyn, supra; Alpha Portland Cement Co. v. U. S. (C. C. A. 3d) 261 F. 339; Appeal of A. J. Siegel, 4 B. T. A. 186; Appeal of H. E. Brubaker, 4 B. T. A. 1171. We think, therefore, that, as the new corporation, while technically a distinct legal entity, is to all practical intents and purposes a mere continuation of the old, it is entitled to the same deduction on account of amortized bond discount that the old corporation would have been entitled to, if the reorganization had not taken place.

In the second place, we think that, irrespective of the practical identity of the old and new corporations, petitioner is entitled to the deduction claimed because of having taken over the assets and assumed the liabilities of the old corporation which was unquestionably entitled to it. Among the liabilities of the old corporation as shown by its books was the bond issue; and among its assets was the amount set up as bond discount, against which was charged each year an amortized portion thereof. In taking over the liabilities and assets, the new corporation took the place of the old as to both of these items. As has been said, bond discount is really deferred interest payable at the maturity of the bonds. When, therefore, the new corporation assumed the obligations of the old, its agreement to pay the bonds at maturity embraced necessarily the agreement to pay this deferred interest, which is included in the face of the bonds. As the new corporation is bound to pay this, there is no reason why it should not amortize it in the same way as the old corporation.

It is argued, however, that the new corporation has agreed to pay the full face of the bonds in consideration of the assets transferred to it, and that, for this reason, it has received full consideration for them and has suffered no discount. But this by no means follows. The fact that bonds have been sold at a discount presupposes that the interest rate which they carry is less than the prevailing rate at the time of sale; and it is but fair to assume that this has been taken into account in the price paid or the terms agreed upon for the transfer of the corporate assets. The matter takes care of itself in the case of a reorganization such as this; for it is manifest that, as the discount was mirrored in the affairs of the old corporation by the fact that its actual assets were that much less than

they would have been had the discount not been exacted, it is mirrored in exactly the same way when the assets pass into the hands of the reorganization. As a man cannot lift himself by his own bootstraps, so a corporation cannot, by a mere process of reorganization, increase its actual assets or wipe out the fact that it is bound to pay bond discount which is in reality deferred interest.

For the reasons stated, we think that there was error in denying to the taxpayer the deduction on account of bond discount. The decision of the Board of Tax Appeals will accordingly be reversed, and the cause will be remanded for further proceedings in conformity with this opinion.

Reversed.

NORTHCOTT, Circuit Judge (dissenting). I regret that I cannot concur in the above conclusion, for the reason that, in my opinion, the two corporations are separate legal entities, and that the new company under the reorganization assumed the payment of the par value of the bonds regardless of the discount, and for the further reason that the new corporation in the reorganization in no way acquired the right to charge off the proportionate part of the discount at which the bonds were originally sold.