## CEM SECURITIES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE. *

### No. 3555.

Circuit Court of Appeals, Fourth Circuit.

June 29, 1934.

*Writ of certiorari denied 55 S. Ct. 143, 79 L. Ed. —.

COLEMAN, District Judge, dissenting.

———◇———

Thomas G. Haight, of Jersey City, N. J. (J. Marvin Haynes and Robert H. Montgomery, both of Washington, D. C., on the brief), for petitioner.

Carlton Fox and John MacC. Hudson, Sp. Assts. to Atty. Gen. (John H. McEvers and Walter L. Barlow, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

This petition to review involves deficiencies in income tax for the year 1928 in the amount of $31,752.31. The questions at issue are (1) whether the taxpayer, a Delaware corporation, had the right to deduct from its income for the period February 21 to December 31, 1928, a net loss suffered by a preceding New York corporation in the earlier portion of the year; and (2) whether the income tax return filed by the taxpayer for the year 1928, including, but not segregating, the operations of its predecessor for the first two months of the year, was a sufficient compliance with the requirements of the Revenue Act of 1928 to start the running of the statute of limitations.

The petitioner was created as a Delaware corporation on February 21, 1928, under the name of Cem Securities Corporation, to take over the assets and liabilities of a New York corporation of the same name which was or-

ganized prior to January 1, 1928. On the later date, upon authorization of the respective stockholders of the two corporations, all the assets of the New York corporation were transferred to the petitioner (except the sum of $13,178.05 retained for the payment of certain New York taxes), in consideration of its assumption of all the liability of the New York corporation. The change from a New York to a Delaware corporation was made because the corporate taxes, under the laws of Delaware, were less than those under the laws of New York. There was no change in the assets and liabilities except for the small amount retained to pay the New York taxes, and this was in effect no change, for, if the taxes had not been paid before the dissolution of the New York corporation, the new Delaware corporation would have had to pay them. There were no changes in the stockholders.

On March 13, 1929, the Delaware corporation filed a document purporting to be a federal income tax return for the calendar year 1928. The return was headed "Corporation Income Tax Return for Calendar Year 1928," "The Cem Securities Corporation (A Delaware Corporation)," "Date of Incorporation 2/21/28." In answer to a question on the first page, it was stated that the document was not a consolidated return of two or more corporations. The affidavit was executed by the president and assistant treasurer of the corporation for which the return was made, and the letter of transmittal stated that the return of the Delaware corporation for the year 1928 was inclosed, showing a deficit of $38,428.27. On the other hand, that part of the return entitled "Schedule K—Balance Sheets" purported to show the assets and liabilities for the beginning of the taxable year 1/1/28 and the end of the taxable year 12/31/28, and, at the top of the page, on which this schedule appeared, the names of both corporations were set out as follows: "The Cems Securities Corporation of New York" over the caption, "Beginning of Taxable Year," and "The Cem Securities Corporation of Delaware" over the caption "End of Taxable Year." The return also showed that the taxpayer did not file a return under the same name for the preceding taxable year, and that it was the continuation or reorganization of a business since December 31, 1927, through the cancellation of a New York state charter for a Delaware charter without other change. There is no dispute in the case that one reading the return would be led to the conclusion that it covered the activities of both corporations during the taxable year. No segregation of any of the items of income or deduction respectively pertaining to the two corporations, however, appeared in the return; and, in computing the deficit shown by the return, the petitioner used as a deduction a net loss of $73,715.18 sustained by the New York corporation in the period from January 1 to February 20, 1928.

Certain entries made on the face of the return after it was filed indicated that it was reviewed in the preliminary audit section of the Bureau of Internal Revenue on July 12, 1929. The Commissioner of Internal Revenue on March 29, 1930, sent a form letter to the taxpayer to the effect that its return for the year 1928 had been examined and was considered to be correct, but that the Bureau would be obliged to redetermine the tax liability should subsequent information be received which would materially change the amount reported.

The deficiency notice from the Commissioner to the taxpayer was sent on March 7, 1932, and received on March 8, 1932. It was stipulated by the parties that there is a deficiency in the income tax of the petitioner for the calendar year 1928 in the sum of $31,752.31, if it be determined from the facts that the statutory period for assessing the deficiency had not expired. That period is fixed as two years by section 275 of the Revenue Act of 1928 (26 USCA § 2275). The Commissioner determined that the deficiency existed, disallowing the deduction of the net loss sustained by the New York corporation in the first part of the year, and, upon appeal, the Board of Tax Appeals affirmed his determination, holding that the purported return was insufficient to put the statute of limitations in motion.

■ It is not entirely clear that the deduction of the loss of the New York corporation accounts for the entire deficiency of $31,752.31; but it may be conceded that such is the case for our present purposes, for the first contention of the petitioner that it had the right to offset the two months' net loss of the New York corporation against the ten months' net income of the Delaware corporation cannot be sustained, in view of the decision of the Supreme Court in New Colonial Ice Company, Inc., v. Commissioner of Internal Revenue, 54 S. Ct. 788, 78 L. Ed. ——, filed on May 28, 1934. It was there held that a new corporation, organized to take over the assets and business of an older corporation in order to be free from certain difficulties attending the older one, may not deduct from

its net income net losses sustained by the older corporation in a preceding period, although the two corporations had the same capital structure and the stock of the new corporation was distributed among the stockholders of the old, share for share. See, also, the decision of this court rendered this day in May Oil Burner Corporation v. Commissioner of Internal Revenue, 71 F.(2d) 644.

■ The question of limitations depends on whether the return filed by the taxpayer on March 13, 1929, may be considered a return within the meaning of section 52 of the Revenue Act of 1928, c. 852, 45 Stat. 808 (26 USCA § 2052), because the limitation of two years, within which an assessment of income taxes must be made under section 275 of that act (26 USCA § 2275), runs from the filing of the return. Section 52 (a), 26 USCA § 2052 (a), requires every corporation, subject to taxation, to make a return, sworn to by certain officers of the company, and stating specifically the items of the gross income and the deductions and credits allowed by the act. Section 54 (a), 26 USCA § 2054 (a), requires every taxpayer to keep such records, render under oath such statements, make such returns, and comply with the rules and regulations prescribed by the Commissioner with the approval of the Secretary of the Treasury. Treasury Regulation 74, promulgated

under the act, provides in article 391 that a corporation, having an existence during any portion of the taxable year, shall make a return, and that, upon liquidation or dissolution of a corporation, it shall show, amongst other things, in its final return, the date and manner of dissolution, and the name and address of every person receiving assets therefrom. (See the text of the statutes and regulation in the margin.)[1]

It is obvious that these statutes and regulations, as applied to the circumstances of this case, contemplate a separate return from each corporation for the portion of the year of its existence. The taxpayer nevertheless contends that the return filed by the Delaware corporation in this case substantially meets the requirements of the law. It urges that the return specifically sets forth the items of income, deduction, and credit of the taxpayer, because these items, although mingled with similar items of the New York corporation, were nevertheless set forth in the return, and that a document filed by a taxpayer, although inaccurate in some particulars, is nevertheless a return if it is filed honestly and in good faith, because the law makes provision for the auditing of returns and for the examination of the books and records of the taxpayer from which any inaccuracy will be revealed. So it is said that an audit of the

---

[1] Section 52 (26 USCA § 2052) Corporation Returns.

"(a) *Requirement.* Every corporation subject to taxation under this title shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer. * * *"

Section 54 (26 USCA § 2054) Records and Special Returns.

"(a) *By Taxpayer.* Every person liable to any tax imposed by this title or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe."

Section 275 (26 USCA § 2275) Period of Limitation upon Assessment and Collection. "Except as provided in section 276 [section 2276]—

(a) *General Rule.* The amount of income taxes imposed by this title shall be assessed within two years after the return was filed, and no proceeding in court without assessment for the collection of such

taxes shall be begun after the expiration of such period."

Treasury Regulations 74 (promulgated under the Revenue Act of 1928).

Art. 391. *"Corporation returns.* Every corporation not expressly exempt from tax must make a return of income regardless of the amount of its net income. In the case of ordinary corporations, the return shall be on Form 1120. * * * A corporation having an existence during any portion of a taxable year is required to make a return.

"Upon liquidation or dissolution of a corporation there shall be attached to the final return a statement showing (1) the date and manner of dissolution, (2) the name and address of each shareholder at dissolution and the number and par value of the shares of stock held by each of them, (3) a description and the value of the liquidation received by each shareholder, (4) the name and address of each individual or corporation other than shareholders and creditors, if any, that received assets at dissolution, (5) a description and the value of the assets received by each such individual or corporation and (6) the consideration, if any, paid by each of them for the assets received."

petitioner's records would have disclosed that the items in its return included income, deductions, and credits of the New York corporation, and would have led to a correction of the error. The fact that the Bureau of Internal Revenue acknowledged receipt of the document as the taxpayer's return for the year 1928, and made certain audits or inspections thereof on July 12, 1929, and that March 29, 1930, is urged as indicating that on the dates mentioned within the statutory period of limitations the Commissioner assumed an attitude inconsistent with its present position that no return recognized by the law had been made. Reference is made to United States v. Mabel Elevator Co. (D. C.) 17 F.(2d) 109, and Valentine-Clark Co. v. Commissioner (C. C. A.) 52 F.(2d) 346, wherein it was held that an inaccurate return is not necessarily a nullity, and that, if a taxpayer makes an honest return which he believes to be in conformity with the law, limitations run from the filing thereof, although the return may be defective in some particular, as, for instance, in claiming an excessive exemption or in being filed for a fiscal instead of a calendar year.

We think, however, that the defect in the return was so fundamental that this argument cannot prevail. It may be conceded, notwithstanding some indications to the contrary on the face of the return, that it purported to show the combined income and expenses of the two corporations which successively conducted the business during the taxable year. But it did not even purport to show separately the operations of each corporation. It therefore did not comply, or attempt to comply, with the mandate of section 52 (a) of the act, 26 USCA § 2052 (a), that every corporation subject to taxation under the act shall make a return, stating specifically the items of the gross income and the deductions and credits allowed by the law. On the contrary, credit for a deduction due one corporation was taken by another, and thereby was frustrated the very purpose of the act to make available to the Commissioner information from which he could test the correctness of the amount of the tax shown by the return.

█ The decisions of the Supreme Court emphasize clearly that it is essential to comply with the requirements of the statute governing returns in order to get the benefit of the limitation provisions. It was held in Lucas v. Pilliod Lumber Co., 281 U. S. 245, 50 S. Ct. 297, 74 L. Ed. 829, 67 A. L. R. 1350, that the period of limitations under the Revenue Act of 1918 did not begin from the time of the filing of a return not verified by the proper corporate officers of the taxpayer as required by section 239 of that act (40 Stat. 1081). The court said (page 249 of 281 U. S., 50 S. Ct. 297, 299):

"Under the established general rule a statute of limitation runs against the United States only when they assent and upon the conditions prescribed. Here assent that the statute might begin to run was conditioned upon the presentation of a return duly sworn to. No officer had power to substitute something else for the thing specified. The return so long as it remained unverified by oath of proper corporate officers did not meet the plain requirements. The necessity for meticulous compliance by the taxpayer with all named conditions in order to secure the benefit of the limitation was distinctly pointed out in Florsheim Bros., etc., v. United States [280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542], supra."

In the case of Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542, the court held that the tentative return devised by the Commissioner of Internal Revenue to meet the emergency caused by the fact that the Revenue Act of 1918 (40 Stat. 1057) was not approved until February 24, 1919, and yet required returns on or before March 15, 1919, was not a return which would start the period of limitation for the assessment of taxes under the act. In discussing the contentions of the taxpayer in that case somewhat analogous to those advanced by the taxpayer here, the court said (pages 459, 462 of 280 U. S., 50 S. Ct. 215, 217):

"We are of opinion that the filing of the document known as Form 1031T, duly executed, did not start the running of the period of limitation. Form 1031T is not an instrument expressly provided for in the act. It is not in the nature of a 'list,' 'schedule,' or 'return,' commonly required by tax statutes. It was an invention of the Commissioner designed to meet a peculiar exigency. Its purpose was to secure to the taxpayer a needed extension of time for filing the required return, without defeating the Government's right to prompt payment of the first installment. As Form 1031T made no reference to income, or to deductions or credits, it could not have been intended as the return 'stating specifically the items of * * * gross income, and the deductions and credits'—the return required to satisfy the statute.

"Section 3182 of the Revised Statutes, U. S. C. tit. 26, § 102 (26 USCA § 102), provides that the Commissioner shall 'make the inquiries, determinations, and assessments of all taxes * * * and shall certify a list of such assessments * * * to the proper collectors.' Section 250 (b) of the 1918 Act (40 Stat. 1083) required that 'as soon as practicable after the return is filed, the Commissioner shall examine it. If it then appears that the correct amount of the tax is greater or less than that shown in the return, the installments shall be recomputed.' It was to serve these purposes that section 239 required all corporations to make returns 'stating specifically the items of * * * gross income and the deductions and credits.' The burden of supplying by the return the information on which assessments were to be based was thus imposed upon the taxpayer. And, in providing that the period of limitation should begin on the date when the return was filed, rather than when it was due, the statute plainly manifested a purpose that the period was to commence only when the taxpayer had supplied this information in the prescribed manner. Form 1120 provided for furnishing the data which would enable the Commissioner to make a determination, assessment, and recomputation. Form 1031T furnished no data which could, in any way, aid him in that connection. It is true that even the complete return on Form 1120 need not be accepted by the Commissioner as the sole basis for the determination of the amount of the tax. Assessments are frequently based on audits of the Income Tax Unit. However, the purpose of these audits is not to eliminate the necessity of filing the return, but to safeguard against error or dishonesty. * * *

"The word 'return' is not a technical word of art. It may be true that the filing of a return which is defective or incomplete under section 239 is sufficient to start the running of the period of limitation; and that the filing of an amended return does not toll the period. But the defective or incomplete return purports to be a specific statement of the items of income, deductions, and credits in compliance with section 239. And, to have that effect, it must honestly and reasonably be intended as such. There is not a pretense of such purpose with respect to Form 1031T."

See, also, Commissioner v. Stetson & Ellison Co. (C. C. A.) 43 F.(2d) 553, 554; Lucas v. Colmer-Green Lbr. Co. (C. C. A.) 49 F.(2d) 234; Myles Salt Co., Ltd., v. Commissioner (C. C. A.) 49 F.(2d) 232; United States v. National Tank & Export Co. (C. C. A.) 45 F.(2d) 1005; Paso Robles Mercantile Co. v. Commissioner (C. C. A.) 33 F.(2d) 653.

It is the duty of the Commissioner, under the act of 1928, as under the earlier statutes, to examine a return as soon as practicable after it is filed (section 57 of the Revenue Act of 1928, 45 Stat. 810 [26 USCA § 2057]), and to make assessment of taxes. The returns required by all of the Revenue Acts were designed to serve this end. We do not regard the return in the pending case as one which, despite inaccuracies, may be accepted as a substantial compliance with the act, but as one which fails completely in an essential element, and did not set in motion the running of the period of limitations.

The decision of the Board of Tax Appeals is affirmed.

WILLIAM C. COLEMAN, District Judge (dissenting).

On the authority of New Colonial Ice Company, Inc., v. Commissioner of Internal Revenue, 54 S. Ct. 788, 78 L. Ed. 1348, decided by the Supreme Court on May 28, 1934, I concur fully in the reasoning and conclusion of the majority of the court in the present case to the effect that the petitioning taxpayer, a Delaware corporation, should not have deducted from its income for the period from February 21 to December 31, 1928, a net loss incurred by a predecessor New York corporation in the earlier portion of the year. However, I am unable to concur with the majority of the court in their finding that the return filed by the Delaware corporation for the year 1928, which included, but did not segregate, the operations of its predecessor for the first two months of the year, was not a sufficient compliance with the requirements of the Revenue Act of 1928 so as to start the running of the statute of limitations.

In Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, page 462, 50 S. Ct. 215, 218, 74 L. Ed. 542, the Supreme Court stated that "The word 'return' is not a technical word of art," and that the filing of a defective or incomplete return may be sufficient to start the running of the period of limitation, provided such return honestly purports to be a specific statement of the items of income, deductions, and credits in compliance with the law. These circumstances exist in the present case, with the additional fact that the Commissioner audited and accepted the return as being one in compliance with the law, and so notified petitioner. It is true

that, because of the consolidated nature of the return, it was not possible to determine the separate taxable net income of each of the two corporations. But there was no concealment of the fact that the return involved two corporations. Such appeared upon its face, and thus the Commissioner audited and accepted the return with the knowledge of this fact. It was not until the very recent decision in the New Colonial Ice Company Case, supra, that the requirement for filing separate returns under such conditions was definitely removed from the field of speculation. Indeed, at the time, there was ample precedent of the Bureau and of the Board of Tax Appeals for making precisely the return that was made. See Ruling, A. R. R. 12, 2 Cumulative Bulletin 612; Grand Rapids National Bank v. Commissioner, 9 B. T. A. 1119.

It is stated in the majority opinion that the return cannot be accepted as a substantial compliance with the law because lacking completely in an essential element, namely, that it did not show, or even purport to show, separately the operations of each corporation. But a return is not a nullity merely because it sets forth more income, more deductions, or more credits than by law it is entitled to. That is actually what occurred in the present case, and, as the petitioner has forcibly asserted, it should make no difference how the improper statement of income, deductions, and credits is brought about in any given return, whether by mistake in addition, subtraction, accounting, facts, understanding of the law and regulations, or the inclusion of items attributable to another corporation but honestly believed by the taxpayer as properly to be taken into account in his or its own return.

Limitations upon the making of assessments have a very definite and important purpose, which is to set a reasonable time beyond which the threat or imposition of additional taxes against the income of years long past will be completely removed, because unjust to the taxpayer.

I have found no reported case which construes the law as strictly as the majority of the court have done, with the possible exception of Lucas v. Colmer-Green Lumber Co. (C. C. A.) 49 F.(2d) 234. If the facts there presented were virtually identical with those now before us, which is not entirely clear from the opinion, I consider the decision too great a refinement of the law.

For these reasons, I feel the decision of the Board of Tax Appeals should be reversed.