## NEW YORK CENT. R. CO. v. COMMIS-SIONER OF INTERNAL REVENUE.*

## COMMISSIONER OF INTERNAL REVE-NUE v. NEW YORK CENT. R. CO.

Nos. 72, 191.

Circuit Court of Appeals, Second Circuit.
Aug. 12, 1935.

Writ of certiorari denied Helvering v. New York Central R. Co., 56 S. Ct. 370, 80 L. Ed. ——.

For opinion below, see 28 B. T. A. 437.

Clive C. Handy, of New York City (Leo Manville, of New York City, of counsel), for New York Cent. R. Co.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., of counsel), for Commissioner.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The first question presented by the taxpayer's petition is whether the discount on bonds sold by predecessor corporations, which were consolidated to form the petitioner, can be amortized over the life of the bonds and a proportionate part thereof be deducted in each of the taxable years in question. The taxpayer made its income returns upon the accrual basis. Had the petitioner itself issued the bonds, there could be no doubt of its right to take a deduction of amortized bond discount in its income tax returns. Old Mission Portland Cement Co. v. Helvering, 293 U. S. 289, 55 S. Ct. 158, 160, 79 L. Ed. 367; Helvering v. Union Pacific R. Co., 293 U. S. 282, 55 S. Ct. 165, 79 L. Ed. 363. But the Commissioner contends that the right to the deduction is limited to the issuing corporation and excludes any deduction for amortization of discount upon bonds issued by a predecessor in ownership of the railroad property; and the Board of Tax Appeals so held, relying upon its own prior decisions, one of which was reversed in Western Maryland R. Co. v. Commissioner, 33 F.(2d) 695 (C. C. A. 4).

The bonds under discussion were issued between 1897 and April, 1914, and the yearly amortization of discount up-on all of them amounts to $401,161.13. The companies which issued these bonds charged the discount to surplus at the close of the year during which the bonds were issued, except one company which charged the discount to cost of road. In 1906 the Indiana, Illinois & Iowa Railroad Company and several other corporations were consolidated to form the Chicago, Indiana & Southern Railroad Company, which assumed the obligation on the outstanding bonds in question. In 1914 the last-named corporation and several others were consolidated to form the New York Central Railroad Company, the petitioner, which likewise assumed the obligation upon the bonds in question. The petitioner did not set up any discount on these bonds in its books of account, but set up assets equal to the total liability on the bonds assumed.

The taxes for the years in question are levied under the Revenue Acts of 1916, 1918, and 1921, respectively (39 Stat. 756, 40 Stat. 1057, 42 Stat. 227). None of the statutes contains any specific authorization of a deduction of amortized bond discount. Such authorization is found in the Treasury Regulations. Article 150, T. R. 33 (Revised), relating to the 1916 act; article 544, T. R. 45 (1920 Ed.), relating to the 1918 act; article 545, T. R. 62 (1922 Ed.), relating to the 1921 act. The validity of these regulations has been recognized by the Supreme Court in the cases already cited. Therefore, as to bonds issued after 1909, the right to the deduction in each of the taxable years would clearly exist, were the issuing corporation the taxpayer. As to bonds issued prior to 1909, article 149 of Treasury Regulations 33 (Revised) is relied upon by the Commissioner as forbidding any deduction for the year 1917. Article 149 reads as follows:

"Art. 149. *Discount on bonds issued prior to 1909.*—Discount on bonds issued and sold prior to the year 1909, if such discount was then charged against surplus or against the income of the year in which the bonds were sold, is held not to be deductible from the income of subsequent years, for the reason that the charging off prior to January 1, 1909, of the entire amount of the discount constitutes a closed transaction, and such transaction cannot be reopened for the purpose of reducing the taxable income

of a corporation for subsequent years by deducting therefrom an aliquot part of the discount."

In our opinion this is an invalid regulation. The bookkeeping entry of charging the discount against surplus cannot make it a closed transaction, as is, indeed, recognized in article 150 dealing with bonds issued after 1909. As Mr. Justice Stone stated in Old Mission Portland Cement Co. v. Helvering, supra, "Amortized bond discount is deductible from the taxpayer's gross income only by way of anticipation of payment of the bonds at maturity." It is then that the taxpayer pays the sum which is the subject of amortization, namely, the difference between the amount realized upon the sale of the bonds and their par value. The principle which justifies spreading this sum over the life of bonds issued after 1909 is equally applicable to earlier issues which mature after the enactment of income tax legislation. See Helvering v. Union Pac. R. Co., supra. A regulation which purports to differentiate between the earlier and later issues in this respect we regard as so arbitrary as to be invalid. Hence the taxable year 1917 stands on the same footing as the taxable years 1920 and 1923, and the question as to each is whether the petitioner has the right to deduct the amortized discount on bonds of the constituent companies.

In Western Maryland R. Co. v. Commissioner, 33 F.(2d) 695 (C. C. A. 4), it was held that a consolidated corporation steps into the place of the constituent corporations and is entitled to deduct amortized discount on bonds issued by them. We think this decision is sound and should be followed in the case at bar. The consolidated corporation does not succeed to the rights and liabilities of the constituent companies as a purchaser but as a successor by operation of law. See Cortland Specialty Co. v. Commissioner, 60 F.(2d) 937, 939 (C. C. A. 2); Commissioner v. Oswego Falls Corp. (C. C. A.) 71 F.(2d) 673, 676 (C. C. A. 2). The assets of the consolidated corporation have the same cost basis as they had when held by the old companies, and are subject to the lien of the bond issues. Hence the consolidated corporation will suffer a loss when it pays the bonds at par, and the regulations as to spreading this loss over the

life of the bonds should apply. They do not in terms confine discount deductions to the issuing corporation, and should not be construed to do so. If the new corporation cannot take the deduction, no one can, for the old companies sustained no loss when the consolidation was effected. As already stated, the subject of amortization is the difference between the cash realized on the bonds and their par value. This difference the consolidated corporation will pay when the bonds mature, and this expenditure it should be allowed to anticipate by yearly amortization during the life of the bonds in order more clearly to reflect its income.

The Commissioner argues that allowable deductions are personal to the taxpayer and cannot be transferred to or used by another. But the cases which announce this doctrine deal with losses sustained by a predecessor and sought to be deducted by a successor. New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S. Ct. 788, 78 L. Ed. 1348; Brandon Corp. v. Commissioner, 71 F.(2d) 762 (C. C. A. 4); May Oil Burner Corp. v. Commissioner, 71 F.(2d) 644 (C. C. A. 4); Cem Securities Corp. v. Commissioner, 72 F.(2d) 295 (C. C. A. 4); Athol Mfg. Co. v. Commissioner, 54 F.(2d) 230 (C. C. A. 1). In the case at bar, no loss was sustained by the issuing corporations in selling their bonds at a discount; the loss will be sustained by the consolidated corporation when the bonds mature and are paid. Hence the deductions here in question are by way of anticipation of the taxpayer's own loss and should have been allowed.

With respect to the claimed deduction of discount on equipment trust certificates, the situation is slightly different. These were issued in 1913 by New York Central & Hudson River Railroad Company, one of the constituent corporations which consolidated to form the petitioner. The discount was charged to profit and loss upon the books of the issuing company. The equipment trust certificates mature serially, and the amounts claimed as deductions for the respective years are $10,910.62 for 1917, $7,937.14 for 1920, and $4,960.68 for 1923. By article 150 of Treasury Regulations 33 (Revised), it is provided that, if discount on bonds sold after 1909 was charged off on the books against earnings or surplus but not deducted in the corporation's return of net

250

income, such discount as was not then deducted may be spread over the life of the bonds and an aliquot part of the discount may be deducted from the gross income of each year until the bonds mature or are redeemed. The Board made no finding whether the discount on the equipment trust certificates, which was charged to profit and loss when they were issued, was then deducted in the issuing corporation's return of net income. If it was, the petitioner should not also have a deduction. The future expenditure when the certificates mature cannot be amortized and deducted annually by way of anticipation, if it has already been deducted in the year when the certificates were issued. Upon the remand of the case to the Board, it should make a finding on this subject.

■ The petitioner also claims to be entitled to deduct in each of the taxable years the amount of $29,518.97 discount on bonds of predecessor companies which were merged with the petitioner. The principles above discussed as applicable in case of consolidation are equally applicable to merger. The companies issuing these bonds charged the discount to profit and loss for the year in which the bonds were issued. But, as in the case of equipment trust certificates, 'the Board made no finding whether the discount was then deducted in the issuing corporation's return of net income. Such a finding is necessary in order to determine the petitioner's right to the claimed deduction.

■ It is also contended that the petitioner's affiliate, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, was entitled to deduct from its gross income for 1923 the amount of $5,764.05 discount on bonds of predecessors that were consolidated to form said company. Under the principles already discussed, this item was deductible.

The next contention of the taxpayer relates to deductions, claimed but disallowed, on account of depreciation of leased equipment. Three leases are involved, one for 99 years, one for 999 years, and one for 99 years and thereafter in perpetuity at the option of the lessee. In each case the lessee agreed to make necessary renewals to keep the leased railroad in good operating condition and upon termination of the lease to return to the lessor the leased equipment in as good

condition as when received, or, in lieu thereof, to return other property of like use and value as the leased equipment. The lessee set up on its books a liability to the lessor for the inventory value of the equipment acquired under the lease. In the case of the Boston & Albany lease, this liability was entered in the accounts when the lease became effective, July 1, 1900. In the cases of the Canada Southern lease and the Chicago Junction lease, the practice was to enter a liability for the inventory value of retired units of equipment when such units were retired from service. It is the contention of the petitioner that under section 12 of the Revenue Act of 1916 (39 Stat. 767) and under section 234 (a) (7) of the Revenue Acts of 1918 and 1921 (40 Stat. 1077, and 42 Stat. 255), it is entitled to deduct from gross income for the years 1917, 1920, and 1923 amounts representing depreciation and loss on retirements of Boston & Albany equipment, or, in the alternative, the inventory value of such equipment retired during the taxable year. A similar claim is made on behalf of the petitioner's affiliate Michigan Central Railroad Company with respect to Canada Southern equipment for the years 1920 and 1923, and on behalf of the petitioner's affiliate Chicago River & Indiana Railroad Company with respect to Chicago Junction equipment for the year 1923. Depreciation has been computed at the rate of 2½ per cent. on the inventory value of leased equipment, and losses on retirements represent the portion of the inventory value of retired equipment not covered by accruals of depreciation at the time it went out of service during the taxable year.

The petitioner argues that either the lessor or the lessee of property should have a right to deduct a reasonable amount for exhaustion and depreciation, that under the facts at bar the lessor sustains no loss of capital, since he will receive equivalent property upon the termination of the lease, and that therefore the loss falls upon the lessee who has the burden of restoring the property's value. The Commissioner relies upon Weiss v. Wiener, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720, as did the Board, as establishing that the claimed deductions should not be allowed. There the taxpayer was engaged in the business of taking 99-year leases, renewable forever, and

subletting. He claimed a deduction for depreciation of the buildings, which, it was assumed for purposes of the decision, he undertook to keep up to their present condition. In disallowing the deduction, Mr. Justice Holmes pointed out that the lessee had not yet made any capital investment, and concluded that "it is not enough that he has made a contract that very possibly may not be carried out to replace that capital at some future time." 279 U. S. 333, at page 336, 49 S. Ct. 337, 338, 73 L. Ed. 720. Despite possible verbal differences in the leases, we think Weiss v. Wiener is controlling and requires affirmance of the Board on this issue. In the case at bar the lessee made no capital investment in the leased property. When it buys equipment to replace leased property retired from service, it then makes a capital investment, and as to such replacements the Commissioner has consistently allowed depreciation as well as loss upon retirement. If the equipment in use when the lease ends is worth as much as the equipment originally leased, the lessee can turn it over to the lessor and need pay nothing in addition. The capital invested in equipment so turned over, to the extent that it has not been recovered by depreciation allowances, will then be lost to the lessee, but until then no loss is sustained. A future loss, it is true, may be anticipated by present deductions where the taxpayer is on an accrual basis, and the allowance of such deduction will more clearly reflect his income. Despite the covenant of the lessee to restore the value of the demised property at the termination of the lease, we do not think that the loss is certain enough to warrant a present deduction. One of the three leases was for 999 years, a second renewable in perpetuity at the option of the lessee. The third lease was for 99 years, but even that might by agreement be renewed for an indeterminate period. This would sufficiently indicate that the loss is not "actual," but at best "merely contemplated as more or less sure to occur in the future." Under Weiss v. Wiener, supra, at page 335, this was thought not enough to sustain an annual allowance for depreciation. This would be equally true of a deduction of the inventory value of the equipment retired, for, accepting the petitioner's contention that on retirement the amount of the lessee's liability became known and fixed, actual restoration in discharge of that obligation is postponed to some remote period when the lease is terminated.

The petitioner places its principal reliance upon Lynch v. Alworth-Stephens Co., 267 U. S. 364, 45 S. Ct. 274, 69 L. Ed. 660, where the lessee of a mine, obligated to mine a minimum tonnage and to pay a stated royalty, was permitted to deduct from gross income a reasonable allowance for depletion. But, as pointed out in Weiss v. Wiener, the whole value of a mining lease lies in the right to remove the ore, and the diminution in the value of the mine is the real object of the lease and the very source of the lessee's gross income. We think railroad equipment is in no wise comparable to ore deposits, for as "in the case of a house or shop the value is not in the right to destroy and the destruction is only an undesired, gradual and subordinate incident of the use." Weiss v. Wiener, supra, 279 U. S. 333, at page 336, 49 S. Ct. 337, 338, 73 L. Ed. 720. For the reasons stated, we conclude that the Board properly disallowed the claimed deduction for depreciation of the leased property. A similar result has been reached in other cases presenting somewhat analogous situations. See Belt R. Co. v. Commissioner, 59 App. D. C. 137, 36 F.(2d) 541; Tunnel R. R. v. Commissioner, 61 F.(2d) 166, 174 (C. C. A. 8); Brevoort Hotel Co. v. Reinecke, 36 F.(2d) 51 (C. C. A. 7).

The final question in dispute has to do with back railway mail pay received by the petitioner and affiliated companies in 1920 and 1921. On December 23, 1919, the Interstate Commerce Commission rendered a decision in a proceeding entitled Railway-Mail Pay, 56 I. C. C. 1, interpreting the provisions of sections 5 and 6 of the Act of Congress approved July 28, 1916 (39 Stat. 425). The decision was not served on the interested parties nor made public until January 15, 1920. As a result of this decision, there was paid to the petitioner and its affiliates in the year 1920 the sum of $1,778,661.65 and in the year 1921 the sum of $57,921.15, representing back pay for railway mail carried in prior years. These amounts were accrued upon the books of the companies in the respective year of receipt and were held by the Board to be taxable income of those years. The

taxpayer now argues that the back mail pay should be regarded as income in the years when the service was performed or at least not later than the year 1919, while the Commissioner contends that the amount of $57,921.15 received in 1921 accrued as income in 1920. Whether this sum should have been added to 1920 income is the sole question presented by the Commissioner's petition for review; whether the order was erroneous in including $1,778,661.25 in 1920 income is raised by the taxpayer's petition.

 In our opinion the taxpayer's position is well taken. By the terms of the statute (39 Stat. 429, § 5), the carriers were "entitled to receive fair and reasonable compensation" for transporting the mail and "for the service connected therewith." The compensation was earned when the services were performed, and no uncertainty existed except as to what was a "fair and reasonable" amount. The decisions relating to the additional compensation to railroads under federal control furnish a strong analogy for accruing the back mail pay to the years when the services were performed. Commissioner v. Old Dominion S. S. Co., 47 F.(2d) 148 (C. C. A. 2); Commissioner v. Midland Valley R. Co., 57 F.(2d) 1042 (C. C. A. 10); Helvering v. St. Louis Southwestern R. Co., 66 F.(2d) 633 (C. C. A. 8); Helvering v. Gulf, M. & N. R. Co., 63 App. D. C. 244, 71 F.(2d) 953. The early decisions of the Board with respect to railway mail pay adopted this view. Western Maryland R. Co. v. Commissioner, 12 B. T. A. 889, 911; Kansas City Southern R. Co. v. Commissioner, 16 B. T. A. 665, 695; Gulf, Mobile & Northern R. Co. v. Commissioner, 22 B. T. A. 233, 258. But thereafter the Board reversed its position. International-Great Northern R. Co. v. Commissioner, 24 B. T. A. 726, 736; Pittsburgh & Lake Erie R. Co. v. Commissioner, 28 B. T. A. 259, 262. We need not now determine whether the back pay should be attributed to the years when the service was performed. At least as early as December 23, 1919, all the facts existed which determined the amount of the government's liability, and all these facts were known to the taxpayer prior to the time of preparing its income tax return for that year. See Continental Tie & Lumber Co. v. United States, 286 U. S. 290, 298, 52 S. Ct. 529, 76 L. Ed. 1111.

Since the taxpayer reported on the accrual basis, we can see no justification for deferring accrual of the income beyond the year when the precise amount thereof could have been included in the tax return. The rules of accounting enforced upon a carrier by the Interstate Commerce Commission are not controlling in the determination of tax liability. Old Colony R. Co. v. Commissioner, 284 U. S. 552, 562, 52 S. Ct. 211, 76 L. Ed. 484.

Accordingly, the order appealed from is affirmed upon the Commissioner's petition; and upon the taxpayer's petition the order is reversed in part, and the cause remanded for further proceedings in conformity with this opinion.