## AMERICAN GAS & ELECTRIC CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 376.

Circuit Court of Appeals, Second Circuit.
Aug. 13, 1936.

Robert H. Montgomery, of Washington, D. C. (Thomas G. Haight, of Jersey City, N. J., and J. Marvin Haynes and Robert H. Montgomery, both of Washington, D. C., of counsel), for petitioner.

528

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals redetermining deficiencies in income taxes of the petitioner, American Gas & Electric Company, and affiliated subsidiary companies for the taxable years 1928, 1929, and 1930. The petitioner and the affiliated subsidiaries filed consolidated returns for these years. Their books were kept on the accrual basis, and the income tax returns for each year were filed on that basis.

The material facts are as follows: The Virginian Power Company (hereinafter called Virginian), a Massachusetts corporation organized in 1912, was an 81 per cent. owned subsidiary of American Gas & Electric Company. In 1924 the latter organized the Appalachian Securities Corporation (hereinafter called Securities) under the laws of New York, and in January, 1925, that company issued 82,000 shares of its first preferred stock to Virginian and assumed all of Virginian's liabilities in exchange for all its assets. This first preferred stock was the only stock outstanding after the transfer, except for three shares held by the incorporators. Virginian afterwards exchanged its stock in Securities for stock of the American Gas & Electric Company. On March 31, 1927, Virginian was dissolved.

On February 14, 1925, the Appalachian Power & Light Company (hereinafter called Power & Light) was organized under the laws of Virginia, transferred to Securities all its stock in exchange for the assets which Securities had just acquired from Virginian, and assumed all the liabilities of the latter. American Gas & Electric Company and Securities, both New York corporations, consolidated on February 17, 1925, under the laws of New York in order to form the petitioner company. Appalachian Electric Power Company was organized by the petitioner on March 4, 1926, under the laws of Virginia. The petitioner had already acquired more than 95 per cent. of the stock of an old company known as Appalachian Power Company, and on April 1, 1926, Appalachian Power Company and Power & Light were merged under the laws of Virginia into Appalachian Electric Power Co.

The result of the above reorganizations was the elimination of Virginian by its dissolution, of Securities by consolidation with American Gas & Electric, and of Power & Light and Appalachian Power by merger into Appalachian Electric Power Company.

Securities assumed all the obligations of Virginian, including its bonded indebtedness, and Appalachian Electric Power, which succeeded to the obligations of Securities and in turn to those of Power & Light through merger with the latter, also assumed the same bonded indebtedness of Virginian. The bonds of Virginian which were thus assumed had been issued by it at a discount. This discount and the expenses connected with the bond issue had been set up on the books as prepaid interest, and each year the company charged to expenses on its books and in its income tax return a pro rata part of the discount and expenses. After Securities took over the assets and assumed the liabilities of Virginian, it continued this practice and put on its books the balances of discount and expenses which had not already been charged. When Power & Light took over the assets and assumed the liabilities of Virginian, it continued to amortize the subsequent balances of discount and expenses on the assumed bonds up to the time when it became merged with Appalachian Power Co. and Appalachian Electric Power Co. The latter company after the merger continued the same practice. After the transfer of the Virginian assets to Securities and assumption of its liabilities by the latter, both corporations treated the transaction as a nontaxable reorganization under sections 203 and 204 of the Revenue Act of 1924 (43 Stat. 256, 258), and neither corporation reported a profit or loss therefrom in its 1925 income tax return. The same situation obtained upon the transfer by Securities to Power & Light of the assets previously acquired from Virginian and the assumption of liabilities by Power & Light. The Commissioner, after an examination and audit of the returns, acquiesced in the above treatment of the transactions. The question is whether deductions for amortization during the years 1928, 1929, and 1930 should have been allowed by the Commissioner upon the bonds originally issued by Virginian.

The Appalachian Power Co., subsequent to March 1, 1913, issued certain of its bonds at a discount, entered the discount and expenses in its books as prepaid inter-

est, and charged a pro rata part thereof on its books and in its income tax returns against its income for each year. Thereafter it became merged with Power & Light and Appalachian Electric Power Company under the name of the latter. The balances of discount and expenses on the various bond issues which had not been charged to business expenses by Appalachian Power Co., Appalachian Electric Power continued to amortize after the merger. When the Appalachian Electric Power Co. through merger with the Appalachian Power Co. and Power & Light acquired the assets and assumed the liabilities of the two latter companies, all three corporations treated the transaction as a nontaxable reorganization under sections 203 and 204 of the Revenue Act of 1926 (44 Stat. 12, 14), and none of them reported in its 1926 income tax return a profit or loss arising out of the reorganization. The Commissioner, after examination and audit of the 1926 returns, treated the transaction in the same manner. The question here also is whether deductions for amortization during the years 1928, 1929, and 1930 should have been allowed upon these Appalachian Power Company bonds.

The Atlantic City Electric Company also claims deductions with respect to amortization of discount and expenses on bonds issued by Electric Company of New Jersey. Each corporation was engaged in the manufacture and sale of electricity in New Jersey and was organized under the laws of that state, the former in 1907, and the latter in 1913. By August 1, 1926, the petitioner had acquired and was the owner of 99 per cent. of all classes of stock of the American Electric Power Company which owned all the common stock of Electric Company, but none of its preferred stock. As of July 31, 1927, Electric Company transferred all its assets to Atlantic City Electric Company and the latter company assumed all its liabilities. Beginning with August 1, 1926, and up to the date of dissolution in 1929, the Electric Company had been included in consolidated income tax returns with the petitioner and other affiliates. From time to time Electric Company had issued and sold bonds at a discount and incurred expenses thereby. The bond discount and expenses were set up in the books of the Electric Company as prepaid interest and each year prior to the transfer to Atlantic City Electric Company, Electric Company charged to expenses and

deducted in its income tax returns a pro rata part of the same. The balances of unamortized discounts and expenses which had not been charged to expenses by Electric Company up to July 31, 1927, when the transfer to and assumption by Atlantic City Electric Company occurred, were pro-rated and charged by the latter against income in its income tax return. The Commissioner and the New Jersey companies treated the transfer by Electric Company to Atlantic City Electric Company as an intercompany transaction and neither of them computed a profit or loss in the transaction. The Commissioner in the cases of these, as in that of the other bonds we have mentioned, held that the petitioner's affiliates after the transfer were not entitled to deduct the bond discount and expenses. Here again the question is whether the deductions for amortization during the years 1928, 1929, and 1930 should have been allowed in respect to the bonds of the Electric Company of New Jersey.

■ The situations in which the Virginian bonds were involved were reorganizations under sections 203 and 204 of the Revenue Act of 1924 (43 Stat. 256, 258). Similarly, the situations in which the bonds of the Appalachian Power Company were involved were reorganizations under sections 203 and 204 of the Revenue Act of 1926 (44 Stat. 12, 14). The bonds of the Electric Company of New Jersey were not involved in a reorganization but in an affiliation, under which no gain or loss could be recognized at the time of the transfer because it was an intercompany transaction. So far as non-recognition of gain or loss at the time of the transfers is concerned, the three situations are alike. In our opinion, the petitioner is not entitled to the deductions for amortization claimed in the case of the Virginian bonds or the bonds of the Electric Company of New Jersey, but is entitled to such deductions in the case of the bonds of the Appalachian Power Co., where there was a merger of that corporation with the Appalachian Electric Power Co.

Bonds of Virginian Power Company and of Electric Company of New Jersey.

■ If amortization is not allowed in respect to the bonds of Virginian and of Electric Company of New Jersey, there will be a loss by reason of discount and expenses connected with the issuance of these bonds which no one can take. Had

there been no transfer, such a loss would be allowed to the company issuing the bonds and under the decision of Helvering v. Union Pacific R. Co., 293 U.S. 282, 55 S.Ct. 165, 79 L.Ed. 363, might be amortized by pro rata deductions from income. Where, however, there is a transfer in a reorganization, the loss is likewise that of the issuing corporation, for the reason that, because of the discount and expenses, it had subjected itself to an obligation larger than the amount it received from the bonds. Because of this increased obligation, the transferor necessarily obtained a less valuable consideration from the transferee at the time of the transfer in reorganization than it would otherwise have received. Nevertheless, under section 203 (b) (4) of the Revenue Acts of 1924 and 1926, no gain or loss is to be recognized upon the transfer. Consequently, where there has been only a partial amortization of discount and expenses and a transfer in reorganization occurs, no further loss will be recognized, and that part of the loss which could not be taken prior to the transfer cannot be taken thereafter. While it might be more satisfactory to carry forward through the successor corporation actual unamortized losses incurred by the predecessor, we can find no warrant for this in the statute, regulations, or decisions of the courts.

Judge Groner, writing for the Circuit Court of Appeals for the District of Columbia in Turner-Farber-Love Co. v. Helvering, 62 App.D.C. 369, 68 F.(2d) 416, expressly disallowed such deductions as are sought by the petitioner, and in New Colonial Ice Co. v. Helvering, 292 U.S. 435, at page 442, 54 S.Ct. 788, 78 L.Ed. 1348, the Supreme Court referred to that case with approval. Moreover, the Supreme Court in New Colonial Ice Co. v. Helvering, supra, and the Circuit Court of Appeals for the First Circuit in Athol Mfg. Co. v. Commissioner, 54 F.(2d) 230, held that transferees in reorganizations were not necessarily to be regarded as identical with the transferors for tax purposes and that they could not claim as deductions losses incurred by the transferors under a general theory that the corporations were so closely connected that separate identity might be disregarded.

The situation in New York Central R. Co. v. Commissioner, 79 F.(2d) 247 (C.C.A.2), and Western Maryland R. Co. v. Commissioner, 33 F.(2d) 695 (C.C.A.4), was different. In each of those cases there was a consolidation of the corporations, and amortization was allowed for the life of the bonds on the ground that the consolidated corporation succeeded to the rights and liabilities of the constituent companies, not as a purchaser, but by operation of law. A merger will in general preserve corporate identity and continue the obligations against a successor company, which is treated as identical with the former obligor. Cortland Specialty Co. v. Commissioner, 60 F.(2d) 937, 939 (C.C.A. 2).

The foregoing considerations seem to require a disallowance of the deductions claimed for amortization of discount and expenses in the case of the bonds of Virginian. The same line of reasoning requires a disallowance of deductions in the case of the bonds of the Electric Company of New Jersey.

### Bonds of Appalachian Power Company.

We have held that there could be no deductions for amortization in case of the bonds of Virginian and of Electric Company of New Jersey because the obligations of the original obligors were not carried forward against the transferees by consolidation or merger so as to preserve the identities of the transferor companies. But the situation of the bonds of the Appalachian Power Company is different. Under the decisions of New York Central R. Co. v. Commissioner, 79 F.(2d) 247 (C.C.A.2), and Western Maryland R. Co. v. Commissioner, 33 F.(2d) 695 (C.C.A.4), deductions should be allowed in the case of those bonds if there was a merger of Appalachian Power Company in the Appalachian Electric Power Company which essentially preserved the identity of the transferor. In Langhorne v. Richmond Ry. Co. (1895), 91 Va. 369, at pages 374, 375, 22 S.E. 159, 161, where there had been a consolidation, the court said:

"The corporation which is created by such consolidation, or the surviving corporation, where another or others are merged into it or consolidated with it, is ordinarily deemed the same as each of the corporations which formed it for the purpose of answering for the liabilities of the old corporation, and may be sued under its new name or under the name of the surviving company for their debts as if no change had been made in the name or in the organization of the original corporation. * * *

"Since, by authority of law and the act of the parties, the consolidated corporations are moulded into one with none of their rights impaired, and none of their responsibilities lessened, there is no good reason why the same proceedings may not be had against the new corporation as might have been had against the old to compel payment of liabilities."

■■ The decisions of the Virginia Court of Appeals in American Ry. Exp. Co. v. Downing (1922) 132 Va. 139, 111 S.E. 265 and in American Ry. Exp. Co. v. Fleishman, Morris & Co., Inc. (1928) 149 Va. 200, 141 S.E. 253, as well as in the Langhorne decision, supra, seem to show that, where there is a merger or consolidation under the Virginia law, the transferee corporation succeeds by operation of law to all the rights and liabilities of the former company and carries forward its identity. The allowance of the deductions for the bonds of the Appalachian Power Company is governed, then, by our decision in New York Central R. Co. v. Commissioner, supra.

Order affirmed, and deductions disallowed as to the bonds of Virginian and bonds of Electric Company of New Jersey, and reversed as to the bonds of Appalachian Power Company, with directions to the Board of Tax Appeals to allow the deductions as to those bonds.

L. HAND, Circuit Judge (dissenting).

If a company keeps its books on an accrual basis and issues bonds at less than par, the discount is immediately incurred, whether one regards it as a loss or an expense. If the books are on a cash basis, the discount is not paid until the bonds are paid. Thus, in either case there is no legal warrant for spreading the deduction over the life of the bonds; the practice which has grown up and is of undoubted validity, is based upon a fiction, following· the accountant's device for preparing to meet the burden of paying the discount all at once. Unless this fiction is extended to cover a buyer in "reorganization" it will be the means of preventing the deduction of a part of what at some time or other is an undoubted loss or expense. The buyer is not a party to the original loan and cannot claim any deduction because of it; it merely buys the assets and pays for them in cash and by a promise to pay the face of the bonds. It is true that that promise includes

the discount, but the cash payment presumably is less by that amount, if the bonds bear interest. Certainly the buyer has not suffered any loss, or paid any expense. Nor will any deduction because of it appear in estimating the buyer's gain or loss, if it sells the assets in whole or in part. True, the buyer's "basis" is the seller's "basis," but if the seller had sold the assets, its "basis" would not include the discount. It would be the cost of the assets sold; that is, the amount borrowed so far as the proceeds of the bonds had been used to buy them. Therefore, all deduction for the unamortized discount disappears from the computation of the taxes of either buyer or seller, unless the buyer is allowed to complete the amortization deductions. A legal fiction is a good contrivance only if it effects a just result, but there is no excuse for it otherwise; this one must be carried out consistently in order to avoid injustice. There may be difficulties when the books are kept on a cash basis, but when as here they are not, it seems to me that the deductions of which the seller is deprived should enure to the buyer rather than be denied in toto.