### NATIONAL FRUIT PRODUCT CO., Inc. v. UNITED STATES.

#### No. 278.

United States District Court, W. D. Virginia. Harrisonburg Division.

May 26, 1952.

Hunton, Williams, Anderson, Gay & Moore, Richmond, Va., for plaintiff.

Andrew D. Sharpe and Elizabeth B. Davis, Special Assts. to the Atty. Gen., Howard C. Gilmer, Jr., U. S. Atty., Roanoke, Va., for defendant.

PAUL, Chief Judge.

This is an action for the refund of excess profits tax paid by the plaintiff for its fiscal year ending June 30, 1946. The parties have filed in the record a stipulation of facts and, no additional evidence having been offered, the facts set out in the stipulation are to be taken as those found by the court. From this stipulation the following appears.

The taxpayer kept its books on an accrual basis and filed its tax returns on the basis of a fiscal year ending June 30th. Following the fiscal year ending June 30, 1946, the taxpayer duly filed its income and excess profits tax returns for that year and computed its excess profits credit pursuant to the provisions of Sect. 714 of the Internal Revenue Code, 26 U.S.C.A. § 714, providing for the excess profits credit based on in-

vested capital. These returns showed an income tax liability of $155,291.72, a declared value excess profits tax liability of $6,424.73, and an excess profits tax liability of $80,665.28. These taxes, aggregating $242,381.73, were duly paid in quarterly installments following the end of the taxable year.

For the year ending June 30, 1948, the taxpayer filed an income tax return showing a net loss in the amount of $209,331.46. One of the deductions claimed on the return was for interest in the amount of $142,643.-17, of which sum $106,564.66 was for interest paid on outstanding indebtedness within the definition of borrowed capital as prescribed by Sect. 719 (a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 719 (a) (1).

By reason of the loss sustained for the year ending June 30, 1948, the taxpayer filed a claim for refund on the taxes paid for the fiscal year ending June 30, 1946, on the basis that it was entitled to a net loss carry-back from 1948 to 1946. The claim was for refund of $80,665.28 excess profits tax and $43,047.30 income tax (a total of $123,712.58) representing the excess profits tax and a portion of the income tax previously paid for the year ending June 30, 1946.

Following discussions between representatives of the taxpayer and of the Commissioner of Internal Revenue certain adjustments were made affecting the amount of the claim for refund and it was then determined by the Commissioner that the taxpayer was entitled to a refund or credit of $50,197.38 of income tax, $6,424.73 of declared value excess profits tax, and $44,319.-88 of excess profits tax previously paid for the year ending June 30, 1946. These amounts, totaling $100,941.99, have been refunded and are not now in controversy.

It is the failure of the Commissioner of Internal Revenue to allow the full amount of the claimed refund which presents the present controversy. This resulted from the fact that in determining the final tax liability for the year ending June 30, 1946, the Commissioner reduced the claimed net operating loss carry-back from the year ending June 30, 1948, by the amount of $53,282.33. This amount represented 50 per cent of interest paid by the taxpayer during the year ending June 30, 1948, on outstanding indebtedness represented by notes. The parties are agreed that the only question now involved is whether the adjustment thus made by the Commissioner was proper.

Section 23 of the Internal Revenue Code, 26 U.S.C.A. § 23, deals with the deductions from gross income which are allowed in arriving at net income. Among the enumerated deductions found in the various subparagraphs of Sect. 23 is the following:

"(s) Net operating loss deduction. For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122."

Section 122 (a), 26 U.S.C.A. § 122 (a), defines the term "net operating loss" as being the excess of the deductions allowed over the gross income (with certain exceptions, additions and limitations provided in subsection (d) which have no bearing on the issue in this case).

Section 122 (b) has to do with the right of a taxpayer who has suffered a net operating loss in any taxable year to a carry-back or carry-over of such loss to a preceding or succeeding year. Section 122 (c) provides that the amount of the "net operating loss deduction" shall be the aggregate of the net operating loss carry-overs and of the net operating loss carry-backs, (with certain adjustments not pertinent here).

It seems, therefore, that the problem becomes one of determining the amount of the net operating loss for 1948 which the taxpayer had a right to carry back, or apply to, the year 1946. The dispute is not as to the amount of the actual loss suffered in 1948, but as to the extent and manner in which this loss may be carried back and applied in recomputing the tax liability for 1946.

The statute providing for an excess profits tax had been enacted October 8, 1940, appearing as subchapter E of Chapter 2 of the income tax law; 26 U.S.C.A. §§ 710–736. At the beginning (July 1, 1945) of the taxpayer's fiscal year ending June 30, 1946, the excess profits tax was in effect and tax-

payer's income for that year was subject to it.

Sect. 711 of the excess profits tax statute, 26 U.S.C.A. § 711, provided: "(a) The excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made: .

\* \* \* \* \* \*

(a) (2) "If the excess profits credit is computed under section 714, the adjustments shall be as follows:

\* \* \* \* \* \*

(B) "Interest. The deduction for interest shall be reduced by an amount equal to 50 per centum of so much of such interest as represents interest on the indebtedness included in the daily amounts of borrowed capital \* \* \*;

\* \* \* \* \* \*

(L) "The net operating loss deduction shall be adjusted as follows:

(i) "In computing the net operating loss for any taxable year under section 122 (a), and the net income for any taxable year under section 122 (b), no deductions shall be allowed for any excess profits tax imposed by this subchapter, and, if the excess profits credit for such taxable year was computed under section 714, the deduction for interest shall be reduced by the amount of any reduction under subparagraph (B) of this paragraph for such taxable year;".

The excess profits tax was repealed by an Act of Congress of November 8, 1945, 59 Stat. 568. The first two paragraphs of the. repealing act are as follows:

"(a) In General.—The provisions of subchapter E of chapter 2 shall not apply to any taxable year beginning after December 31, 1945.

"(b) Carry-Backs from Years After 1945, Etc.—Despite the provisions of subsection (a) of this section the provisions of subchapter E of chapter 2 shall remain in force for the purposes of the determination of the taxes imposed by such subchapter for taxable years beginning before January 1, 1946, such determination to be made as if subsection (a) had not been enacted but with the application of the amendments made by subsection (c) of this section and section 131 of this Act."

(The subsection (c) referred to deals with unused excess profits-credits which are not here involved. Nor are the provisions of Sect. 131 involved in the dispute)

It appears, therefore, that although the excess profits tax was repealed as to taxable years beginning after December 31, 1945, its provisions remained in force for the purpose of determining such taxes for years beginning before that date. To apply this provision to the specific case, I take it to mean that when the taxpayer suffered an operating loss in the year 1948 and sought to carry it back for a credit upon (or recomputation of) its taxes for 1946, the determination of the amount of the net operating loss deduction to be used in recomputing the tax liability for 1946 should be made as if the excess profits tax had not been repealed.

The court is not here called on to compute the proper tax liability for the year 1946. Counsel have emphasized that there is only one question involved in the case, which, in paragraph 8 of the stipulation filed by the parties, is stated thus:

"The only portion of the claim for refund of National that is now in controversy relates to the effect of the deduction of interest in determining the net operating loss of National for the year ended June 30, 1948, and the resulting effect upon the net operating loss deduction of National for the purpose of computing its excess profits tax liability for the year ended June 30, 1946. \* \* \*"

The limited issue is further stated in plaintiff's brief as follows: "Again we may note that \* \* \* the only question for decision is whether the provisions of § 711 (a) (2) (L) (i) require an adjustment for interest under the circumstances of this case."

I am of opinion that the Commissioner was correct in his holding upon the tax-

payers application for refund; i. e. in requiring the adjustment for interest which is the subject in controversy.

Net income is computed by allowing the deduction from gross income of various enumerated items. 26 U.S.C.A. § 23. Among these items is interest paid on indebtedness. 26 U.S.C.A. § 23 (b). Among other items deductible, § 23 (s) is the net operating loss deduction, which is to be computed under Sect. 122.

Coming to Sect. 122 (a) we see that "net operating loss" means the excess of the deductions allowed over the gross income. If the aggregate of the permissible deductions exceeds the gross income there is a net operating loss in the amount of such excess. And interest paid on indebtedness is one of the items which enters into the aggregate of deductions which is balanced against the gross income to determine whether or not there has been an operating loss and, if so, the amount of it. There is nothing in Sect. 23 or in Sect. 122 which limits the amount of interest for which a deduction can be taken. And ordinarily, and but for the intervention of the Excess Profits Tax statute, interest paid on indebtedness is fully deductible.

But the Excess Profits Tax statute provided that in *computing net operating loss* for any taxable year under Section 122, the deduction for interest should be reduced by 50 per cent. See 26 U.S.C.A. § 711 (a) (2) (L) (i) and § 711 (a) (2) (B), heretofore quoted.

It is pointed out by the taxpayer that Section 711 (a) (2) (J) (i) provides that this 50 per cent reduction in the amount of interest paid shall be made "if the excess profits credit for such taxable year was computed under Section 714". From this it is argued that , since the Excess Profits Tax (having been repealed) did not apply to income for the year 1948 and the taxpayer was not subject to the excess profits tax for that year, it did not and could not have computed an excess profits credit under section 714 or any other section.

It is true that by the Act of November 8, 1945, 59 Stat. 568, the Excess Profits Tax statute was repealed to the extent of pro-

viding that it should not apply to any taxable year beginning after December 31, 1945. But it was specifically provided that the provisions of the Excess Profits Tax statute should remain in full force for the purpose of determining taxes imposed by it for years beginning before January 1, 1946, and that such determination should be made as if the statute were still in effect. See Section 122, subsection (b) of the Act of November 8, 1945.

The heading of subsection (b)— *"Carry-backs from Years After 1945 etc."* —would indicate that its purpose was to cover just such cases as the one presented here. I interpret the intent to be that when in any year beginning after December 31, 1945, a taxpayer had a net operating loss which he sought to carry back for credit upon, or recomputation of, its taxes for a year beginning before the date named, the recomputation for such prior year should be made as if the excess profits tax was still in effect.

Applying this interpretation to the immediate case we have this situation: The taxpayer filed a return for 1948 showing a net operating loss which it then sought to carry back to 1946. One of the deductions shown on that return, and which contributed to the operating loss, was interest paid. In considering the amount to be allowed as a carry-back the Commissioner considered that the amount of interest paid as shown in the return must be reduced by 50 per cent as provided by Section 711 (a) (2) (L) (i), which he construed as still being in effect for this purpose. It is my opinion that this ruling was correct.

The plaintiff cites the opinion in the case of Reo Motors v. C.I.R., 338 U.S. 442, 450, 70 S.Ct. 283, 287, 94 L.Ed. 245, to the effect that "net operating loss must be computed solely on the basis of the statutes in effect during the taxable year when the loss was incurred." As the opinion further adds: "Only if such a loss exists under those statutes will a taxpayer have anything that may be carried over or back."

But a net operating loss is not necessarily the same as the permitted net operating loss deduction. In the case just referred to,

Reo Motors v. C.I.R., it is said, 338 U.S. at page 446, 70 S.Ct. at page 285.

"The amount of that deduction is determined in three separate steps. First, the net operating loss is determined (under Sect. 122a) * * *. Second, net operating loss having been determined, the amount and extent to which it may be utilized as a carry-over is set out in § 122 (b) (2), and as a carry-back in § 122 (b) (1). Finally, the amount which may actually be deducted from gross income under § 23 (s) is computed under the terms § 122 (c)."

This same opinion, 338 U.S. at page 450, 70 S.Ct. at page 287, after pointing out that whether there has been an operating loss and the amount of any such must be determined by the statutes in effect during the taxable year when the loss occurred, continues. "The amount of net operating loss which may be utilized as a carry-over or carry-back and the extent to which it may be used as an off-set to net income in another year depend upon the law of the year in which the "carry" is effective, § 122 (b), while the net operating loss deduction which may be taken in any one year depends upon the law in effect during that year."

Under the terms of the Excess Profits Tax statute, Sect. 711 (a) (2) (L) (i), the net operating loss had to be adjusted by reducing the amount of interest by 50 per cent in order to arrive at the amount of the permitted net operating loss deduction. This statute was in effect for the fiscal year ending June 30, 1946, the year to which the taxpayer desires to apply the carry-back. And was continued in effect by the Act of November 8, 1945, (the repealing act) for the purpose of determining the amount of carry-backs to years prior to the repeal. The result was that when the taxpayer sought a reduction in its 1946 taxes because of an operating loss in 1948, the amount of this reduction was determined by the law in effect in 1946, which required the interest adjustment of which the taxpayer complains.

Plaintiff's claim will have to be dismissed and judgment will be entered in favor of the defendant with costs.