FLORY MILLING CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36105. Promulgated December 31, 1953.

*William P. Thorn, Esq.*, for the petitioner.
*Charles J. Hickey, Esq.*, for the respondent.

HILL, *Judge:* The deficiency in the excess profits tax of the petitioner for the taxable year ended September 30, 1944, was determined by the respondent by allowing a deduction of $33,778.08 for an unused excess profits credit carried back to 1944 from the taxable year ended September 30, 1946. In computing this unused excess profits credit for the taxable year 1946, the respondent reduced a net operating loss sustained by the petitioner in the taxable year 1948 by the amount of $17,361, which represents 50 per cent of the interest expended during 1948 by the petitioner for borrowed capital. The determination of the respondent is based upon the following assumptions: (1) That the petitioner is required to compute an excess profits credit for the year 1948, and (2) that the excess profits credit for the year 1948 must be computed under the invested capital method rather than the income method. If either of the above assumptions is incorrect, the respondent's determination falls for want of a sound basis.

To support the first assumption the respondent relies upon the provisions of section 711 (a) (2) (L) (i) of the Code and section 122 (b) of the Revenue Act of 1945, both of which are discussed below.

The provisions of section 711 (a) (2) (L) (i) are as follows:

SEC. 711. EXCESS PROFITS NET INCOME.

(a) TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1939.—The excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made:

* * * * * * *

(2) EXCESS PROFITS CREDIT COMPUTED UNDER INVESTED CAPITAL CREDIT.—If the excess profits credit is computed under section 714, the adjustments shall be as follows:

* * * * * * *

(L) NET OPERATING LOSS DEDUCTION ADJUSTMENT.—The net operating loss deduction shall be adjusted as follows:

(i) In computing the net operating loss for any taxable year under section 122 (a), and the net income for any taxable year under section 122 (b), no deduction shall be allowed for any excess profits tax imposed by this subchapter, and, if the excess profits credit for such taxable year was computed under section 714, the deduction for interest shall be reduced by the amount of any reduction under subparagraph (B) of this paragraph for such taxable year; * * *

This section was required by the presence of section 710 in the Internal Revenue Code, which provides for the existence of an excess profits credit.

If the taxpayer computed its excess profits credit by the invested capital method, it was allowed to include in computing its excess profits credit 50 per cent of its borrowed invested capital. However, in computing excess profits net income, Congress required by section 711

(a) (2) (B)[1] the elimination of 50 per cent of the interest on such borrowed capital. This was designed to prevent a double advantage to the taxpayer who borrowed capital, and consistent with this intention a corresponding adjustment for interest on borrowed capital was required in computing a net operating loss carry-back for the purpose of computing the excess profits credit in the loss year. Otherwise the taxpayer would indirectly have obtained the double advantage referred to above in the year to which the loss was carried, that is, the taxpayer would have used its borrowed capital in arriving at its excess profits credit for the year of the loss by deducting the interest in arriving at the net operating loss and, in carrying back the net operating loss for use in computing the excess profits net income for a prior year, it was necessary to eliminate the interest paid on borrowed capital from the net loss or the taxpayer would have received an advantage in the year to which the loss was carried back that was forbidden for the year in which such interest was paid.

It should be noted that the adjustment required by section 711 (a) (2) (L) (i) had to do with determining excess profits credits only and did not affect the carry-back of net operating losses for income tax purposes.

By the Revenue Act of 1945, Congress provided for the repeal of the excess profits tax law. Section 122 of that act provides as follows:

SEC. 122. REPEAL OF EXCESS PROFITS TAX IN 1946.

(a) IN GENERAL.—The provisions of subchapter E of chapter 2 shall not apply to any taxable year beginning after December 31, 1945.

(b) CARRY-BACKS FROM YEARS AFTER 1945, ETC.—Despite the provisions of subsection (a) of this section the provisions of subchapter E of chapter 2 shall remain in force for the purposes of the determination of the taxes imposed by such subchapter for taxable year beginning before January 1, 1946, such determination to be made as if subsection (a) had not been enacted but with the application of the amendments made by subsection (c) of this section and section 131 of this Act.

(c) UNUSED EXCESS PROFITS CREDIT FOR TAXABLE YEAR BEGINNING AFTER DECEMBER 31, 1945.—Section 710 (c) (2) (defining the unused excess profits credit) is amended by inserting at the end thereof a new sentence reading as follows: "There shall be no unused excess profits credit for a taxable year beginning after December 31, 1946. The unused excess profits credit for a taxable year

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

(a) TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1939.—The excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made:

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

(2) EXCESS PROFITS CREDIT COMPUTED UNDER INVESTED CAPITAL CREDIT.—If the excess profits credit is computed under section 714, the adjustments shall be as follows:

　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

(B) Interest.—The deduction for interest shall be reduced by an amount equal to 50 per centum of so much of such interest as represents interest on the indebtedness included in the daily amounts of borrowed capital determined under section 719 (a).) ;

beginning in 1946 and ending in 1947 shall be an amount which is such part of the unused excess profits credit determined under the preceding provisions of this paragraph as the number of days in such taxable year prior to January 1, 1947, is of the total number of days in such taxable year."

It is apparent from the language of the above quoted section of the Revenue Act of 1945 that the respondent has seized upon subsection (b) to support his determination herein and in doing so has completely ignored the provisions of subsection (c), which provides that there shall be no unused excess profits credit for a taxable year beginning after December 31, 1946. The scheme of the World War II excess profits tax law provided for two types of excess profits credits, used and unused. It is obvious that the petitioner was under no obligation to compute an excess profits credit to be "used" for the taxable year 1948, for section 122 (a) of the Revenue Act of 1945 provides that there shall be no excess profits tax levied for the year 1948. It is equally apparent from section 122 (c) of the Revenue Act of 1945 that the petitioner need not, and in fact can not, compute an unused excess profits credit for the taxable year 1948. Therefore, it would seem that the double advantage to which section 711 (a) (2) (L) (i) was directed is an impossibility for the year 1948. The congressional directive contained in subsection (b) of section 122 of the Revenue Act of 1945 was modified by subsection (c) so as to eliminate the possibility and the necessity of the petitioner's computation of an excess profits credit for the year 1948. This position is borne out by the legislative history of the repealing act. See S. Rept. No. 655, 79th Cong., 1st Sess., pp. 29 et seq., and H. Rept. No. 1165, 79th Cong., 1st Sess., p. 7.

All this leads us to the conclusion that the respondent's major premise is invalid. Since this is so, it is not necessary that we discuss his minor premise in detail. However, it may not be amiss to point out that it is founded upon the language of section 712 (a) of the Internal Revenue Code, which the respondent argues requires the petitioner to compute its nonexistent excess profits credit for the year 1948 under the invested capital method. The language of section 712 (a), insofar as here material, is as follows:

(a) DOMESTIC CORPORATIONS.—In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 [based on income] or section 714 [based on invested capital], whichever amount results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed. * * *

Remembering that the petitioner incurred a net loss for its taxable year ended September 30, 1948, it is apparent that the "lesser tax under this subchapter for the taxable year," or 1948, would be zero regardless of which method was used in computing a nonexistent excess profits credit for that year. Therefore, it would seem that the

petitioner would have as much right to elect the method by which the nonexistent credit is to be computed as the respondent for we know of no method by which a tax of zero can be fragmentized to produce a "lesser tax."

To support his determination herein the respondent relies upon and cites the authority contained in *National Fruit Products Co.* v. *United States*, 105 F. Supp. 658, affirmed per curiam 199 F. 2d 754, certiorari denied 345 U. S. 950. The *National Fruit Products Co.* case involved facts which were substantially identical with those with which we are presently concerned. However, in discussing section 122 of the Revenue Act of 1945, the District Court made the following parenthetical remark:

The subsection (c) referred to deals with unused excess profits-credits which are not here involved. Nor are the provisions of Sect. 131 involved in the dispute

and reached its decision as though the repealing act had not specifically provided that there should be no unused excess profits credit for the year 1948.

It is obvious that unless the factual premise specified by section 711 (a) (2) (L) (i) existed, that is, that an excess profits credit must be computed for 1948 under section 714, the net operating loss deduction was not required to be reduced by an amount representing 50 per cent of interest paid on borrowed capital. Therefore, in the case of *National Fruit Co.*, respondent's case depended on the computation of an excess profits credit (unusable) for 1948 under section 714 to supply a factual element necessary to render operative the above cited statutory provision. In that case there was no actual computation of such credit under section 714. No such computation could have been made, for that section became *functus officio* with the abolition of the excess profits credit. But respondent determined a theoretical computation of such credit under section 714 and on the basis of such theoretical computation determined that section 711 (a) (2) (L) (i) was operative. It cannot, therefore, be correctly said that the unused excess profits credit referred to in subsection (c) was not involved in the *National Fruit Co.* case. The theoretical computation of such credit under section 714 was the supporting keystone of the holding therein.

In the instant case the success of respondent's case depends on the establishment of the following:

1. That notwithstanding subsection (c) abolished excess profits credit for all taxable years beginning after December 31, 1946, an excess profits credit must be computed in the instant case for the year 1948.

2. That such excess profits credit should be computed under section 714, and

3. That notwithstanding no factual computation of such credit was made or was possible, respondent's determination of a theoretical computation of such credit under section 714 was valid.

We think that the record here unequivocally negatives the correctness and validity of each of the three stated conditions and that hence respondent's contentions herein must be disapproved.

We have pointed out above that section 122 (a) abolished the excess profits tax for 1948 and that subsection (c) abolished the excess profits credit for 1948. Since there was no excess profits tax and no excess profits credit for 1948, section 714 was a nullity as to that year. There can be no effective or valid provision of statute to compute a nonexistent credit to a nonexistent tax. Subsection (c) contributed vitally to this factual status and is necessarily here involved. Subsection (b) did not continue either the excess profits tax or excess profits credit to ¹948. We decline to be led into the fallacious operation of computing a hypothetical credit to a hypothetical tax.

The United States Court of Appeals for the Fourth Circuit affirmed the opinion of the District Court in *National Fruit Products Co.,* *supra,* with the following language:

The gist of the taxpayer's argument is that there is a definite relationship between the inclusion of 50 per cent. of borrowed capital in computing the excess profits credit under Section 714 of the statute, 26 U. S. C. A., and the deduction of the interest paid by the taxpayer to the extent of 50 per cent. of the total; and hence when Congress provided in the repealing act that there should be no unused excess profits credit after December 31, 1946, it must have intended also to abolish the 50 per cent. reduction in the allowance for interest for the same period. However equitable such an arrangement might have been, the fact is that Congress did not tie the two provisions together, and we must observe the statutory conditions on which the excess profits statute was repealed and the carry-back of subsequent losses to the excess profits tax period was allowed.

We believe section 122 (c) of the Revenue Act of 1945 to be vital to and controlling in the decision of this case and that Congress did tie the provisions of subsections (b) and (c) of section 122 of the Revenue Act of 1945 together. Indeed, Congress specifically provided that determinations made under section 122 (b) should be made with the application of amendments made by subsection (c) of that section. We must, therefore, respectfully decline to follow the authority of the above cited case and hold the respondent's determination in this case to be incorrect.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

TURNER, *J.,* dissenting: It is my opinion that the United States Court of Appeals for the Fourth Circuit, in *National Fruit Products Co.* v. *United States,* 199 F. 2d 754, has correctly interpreted the statute as it was enacted by Congress, and that that case should be given controlling effect here.