**LOFTIN et al. v. FAHS.**

**Civ. No. 2208-J.**

United States District Court,
S. D. Florida, Jacksonville Division.

July 12, 1954.

Charles T. Akre, Washington, D. C., Russell L. Frink, Harold B. Wahl, Jacksonville, Fla., Robert N. Miller, F. O. Graves, Miller & Chevalier, Washington, D. C., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Elizabeth B. Davis, Sp. Assts. to Atty. Gen., James L. Guilmartin, U. S. Atty., Miami, Fla., Edith House, Asst. U. S. Atty., Jacksonville, Fla., for defendant.

SIMPSON, District Judge.

This cause was tried before the Court upon stipulated facts, without a jury. From the pleadings, exhibits, the stipulation of facts, the argument and briefs of the respective parties, the Court makes the following

### Findings of Fact.

1. This is an action under the Internal Revenue Code to recover federal income and excess profits taxes paid by the plaintiffs to the defendant for the years 1943, 1944, 1945 and 1946.

2. At the time the action was brought Scott M. Loftin and John W. Martin were trustees in bankruptcy for Florida East Coast Railway Company, hereinafter referred to as the taxpayer. Scott M. Loftin has since become deceased, and John W. Martin is the surviving sole trustee and proper plaintiff.

3. The taxpayer is a corporation organized and existing under the laws of Florida with its principal office in St. Augustine, Florida. The taxpayer owns and operates a railroad within the State of Florida.

4. The defendant, John L. Fahs, is a resident of Florida and at the time the taxes in question were paid and at the time this suit was filed was the Collector of Internal Revenue for the District of Florida.

5. The plaintiffs, as trustees for the taxpayer, filed with the defendant federal income and excess profits tax returns for the calendar years 1943, 1944 and 1945, and filed a federal income tax return for the calendar year 1946, and paid to the defendant the taxes shown to be due on such returns.

6. The plaintiffs, as trustees for the taxpayer, filed with the defendant federal income tax returns for the calendar years 1947 and 1948 showing thereon

net operating losses of $3,887,056.10 for 1947 and $2,113,406.53 for 1948.

7. Thereafter, on June 9, 1949, the plaintiffs filed with the defendant claims for refund of income and excess profits taxes for the years 1943, 1944, 1945 and 1946. The claims were based on carrying the net operating loss of $3,887,056.10 from 1947 back to 1945 as a deduction in redetermining the 1945 taxable income and in carrying back to 1946 from 1948 the net operating loss of $2,113,406.53 as a deduction in redetermining the 1946 taxable income. These net operating loss carry backs by reducing the taxable income for 1945 and 1946 produced unused excess profits credits for 1945 and 1946 which were to be carried back as excess profits credits for 1943 and 1944 thereby resulting in claimed over-payments of excess profits taxes for those years also.

8. The Commissioner of Internal Revenue examined the returns and the claims for refund and determined that, according to his interpretation of Section 122 of the Internal Revenue Code, 26 U.S.C.A. § 122, there were net operating losses of $2,216,106.34 for 1947 and $341,626.89 for 1948. The Commissioner allowed the 1947 net operating loss of $2,216,106.34 as a carry-back deduction against the normal tax income for 1945 and he allowed the 1948 net operating loss of $341,626.89 as a carry-back deduction against the normal tax income for 1946.

9. The Commissioner reduced the 1947 net operating loss by $1,341,899.45 and allowed a 1947 net operating loss carry-back of only $874,206.89 as a deduction against the 1945 excess profits income. The Commissioner reduced the 1948 net operating loss by $1,341,056.27 and allowed no 1948 net operating loss carry-back as a deduction against the 1946 excess profits income. The reductions of $1,341,899.45 and $1,341,056.27 represent 50% of the simple interest which accrued on borrowed capital in the respective years 1947 and 1948.

10. As a result of his adjustments the Commissioner made a partial allowance of the claims for refund and in 1951 refunded overpaid taxes as follows:

| Year | Income Taxes | Excess Profits Taxes |
|------|-------------|---------------------|
| 1945 | $664,387.80 | $474,935.56 |
| 1946 | 129,818.21 | |

On May 11, 1951 the 'Commissioner disallowed in their entirety the claims for 1943 and 1944 and on July 19, 1951 he made a partial disallowance of the claims for 1945 and 1946.

11. After taking into account the refunds made by the Commissioner in 1951, the net taxes paid by the trustees to the defendant are as follows:

| Year | Income Taxes | Excess Profits Taxes |
|------|-------------|---------------------|
| 1943 | $2,525,116.57 | $2,614,356.24 |
| 1944 | 1,115,579.99 | 3,637,422.21 |
| 1945 | 76,490.38 | 262,772.27 |
| 1946 | 68,598.57 | |

12. On August 13, 1951 the trustees filed with the defendant timely amended and supplemental claims for refund for the years 1943, 1944, 1945 and 1946, which claims were disallowed on March 18, 1952.

13. In determining the net operating loss of $2,216,106.34 for 1947 the Commissioner did not allow as a deduction from gross income an item of $1,620,622.94 representing an accrual of interest during 1947 on matured but unpaid bond interest coupons. Likewise, in determining the net operating loss of $341,626.89 for 1948 the Commissioner did not allow as a deduction from gross income an item of $1,697,028.03 representing an accrual of interest during 1948 on matured but unpaid bond interest coupons.

14. The taxpayer has outstanding $45,000,000 first and refunding 5% gold bonds dated September 1, 1924, and maturing September 1, 1974. These bonds are widely distributed in the United States and in some foreign countries but the major portion are held by Florida corporations and residents. The

bonds have attached to them semi-annual interest coupons payable on March 1 and September 1 of each year. The bonds are secured by a mortgage on all of the property of the taxpayer used for railway purposes, and all of such property lies within the State of Florida. The mortgage was executed and made payable in New York State, and the trustees under the mortgage indenture were a New York bank and an individual, a resident of New York. The mortgage provides for entry by the trustees upon the property after default and that in case the principal sum of the bonds shall not have become due at that time income shall be applied to the payment of the interest in default "with interest thereon at the same rates, respectively, as were borne by the respective bonds on which such interest shall be in default." It further provided that any proceeds of sale by the trustees should be applied after expenses of the sale had been paid and other administrative expenses, to the payment of the amounts of principal and interest due, together with interest on the principal and overdue installments of interest.

15. The taxpayer became in default in the payment of interest on the First and Refunding 5% mortgage bonds on September 1, 1931. The taxpayer was in federal equity receivership in the District Court of the United States for the Southern District of Florida from September 1, 1931 through January 31, 1941, and since January 31, 1941 the taxpayer has been in the same Court in Section 77 reorganization proceedings under the Bankruptcy Act, 11 U.S.C.A. § 205. A number of the interest coupons have been paid since 1931 under orders of the Bankruptcy Court but no interest has been paid on the defaulted coupons, the determination of the right to payment of interest thereon to the coupon holders being reserved by the court orders entered since 1943, directing payment of the coupons. The financial condition of the taxpayer has continued to improve over a period of years. At recent valuations the property covered by the mortgage is insufficient to pay the principal amount of the bonds and the overdue coupon interest. The amount of the coupon interest, matured and unpaid, was $24,375,000 on January 1, 1943, $31,125,000 on January 1, 1947, and $32,250,000 on January 1, 1948. As determined by this Court in its opinion in In re Florida East Coast Railway Company, 103 F.Supp. 825, promulgated March 11, 1952, the value of the property covered by the mortgage was insufficient at that date to pay the principal amount of the bonds and the overdue coupon interest. There are other creditors of the taxpayer holding claims for at least $1,900,000.

16. On petition of the plaintiffs the District Court on November 18, 1943 found the interest on the defaulted coupons to be a valid obligation of the taxpayer and directed the plaintiffs to accrue such interest on the taxpayer's books and to deduct same from income for income tax purposes for 1942 and subsequent years.

Conclusions of Law.

1. This Court has jurisdiction to hear and determine the questions presented in this action.

2. The matured but unpaid interest coupons on the First and Refunding mortgage 5% gold bonds dated September 1, 1924, are valid indebtedness of the taxpayer.

3. Accrued interest on the unpaid coupons is a valid obligation of the taxpayer and is interest on indebtedness.

4. There shall be allowed as a deduction from gross income in determining the amount of the net operating losses for the years 1947 and 1948 interest which accrued on indebtedness in the amount of $1,620,622.94 in 1947 and in the amount of $1,697,028.03 in 1948.

5. The correct net operating loss carrybacks are $3,836,729.28 for 1947 and $2,038,654.92 for 1948.

6. There is no requirement that the net operating losses sustained in 1947 and 1948 shall be reduced by 50% of interest on borrowed capital before being

carried back to 1945 and 1946 to redetermine excess profits income for those years, and the Commissioner's action in making such a reduction was erroneous.

The contrary conclusion was reached by the Court of Appeals for the Fourth Circuit in 1952 in National Fruit Product Co., Inc., v. U. S., 199 F.2d 754, affirming per curiam the District Court for the Western District of Virginia, Paul, C. J., 105 F.Supp. 658.

However, with fifteen of the sixteen Tax Court Judges concurring, the Tax Court of the United States sustained the taxpayer's position in analogous circumstances in Flory Milling Co., Inc., v. Commissioner, 21 T.C. 432, Hill, Judge, promulgated December 31, 1953. I prefer to follow the analysis and reasoning of the Flory Milling case.

7. The plaintiff, John W. Martin, as sole surviving Trustee is entitled to judgment against the defendant Collector of Internal Revenue for the amounts claimed.

The parties may present judgment in proper form and in the correct amount upon application.