AMBASSADOR HOTEL COMPANY OF LOS ANGELES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33123.   Filed October 29, 1954.

*John E. Hughes, Esq.*, for the petitioner.
*Robert G. Harless, Esq.*, and *Donald P. Chehock, Esq.*, for the respondent.

**OPINION.**

MURDOCK, *Judge:* The Commissioner determined deficiencies as follows for fiscal years ended January 31:

| Year ended | Declared value excess-profits tax | Excess profits tax | Income tax |
|---|---|---|---|
| 1944 | $2,235.44 | $92,000.04 | |
| 1945 | | 72,821.28 | |
| 1946 | 2,799.52 | 51,072.92 | |
| 1947 | | | $22,893.15 |

The issues for decision are:

(1) Whether profits on purchases by the petitioner of its own bonds should be included in excess profits income;

(2) Whether consents filed by the petitioner under section 22 (b) (9) were sufficient to exclude from its gross income the income attributable to the discharge of its indebtedness;

(3) Whether the net operating loss for the year ended in 1940 must be reduced by interest in the computation of the unused excess profits credit carry-over to the year ended in 1944; and

(4) Whether the petitioner is entitled to a deduction for the unamortized bond discount of its predecessor's.

The facts have been presented by a stipulation which is adopted as the findings of fact.

The returns for the taxable years were filed with the collector of internal revenue for the sixth district of California.

The petitioner contends that profits which it realized during the taxable years on purchases of its own bonds are not to be included in

its excess profits tax income. The Commissioner concedes that the profit made by the petitioner on the purchase of its own bonds during the taxable years was included in excess profits net income and states: "It appears that under Section 711 (a) (2) (E) such profit is not includible for excess profits tax purposes." The profits in question are excluded from excess profits net income for each year under the provisions of section 711 (a) (2) (E) as they applied to the taxable years and the first issue is decided for the petitioner.

Section 22 (b) (9) of the Internal Revenue Code, as it applied to the taxable years, provided that the income of a corporation attributable to the discharge within the taxable year of any indebtedness of the taxpayer shall not be included in gross income and shall be exempt from income tax "if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulation prescribes, its consent to the regulations prescribed under section 113 (b) (3) then in effect." Section 113 (b) (3) provided that the basis of any property held by the taxpayer should be reduced by any amount excluded from gross income under section 22 (b) (9). Regulations 111, section 29.22 (b) (9)–2, state that a consent to have the basis of its property adjusted as provided in the sections of the Internal Revenue Code referred to "shall be made by or on behalf of the taxpayer corporation in duplicate on Form 982, in accordance with these regulations and the instructions on the form or issued therewith" and the original and duplicate "shall be filed with the return." The instructions on the back of Form 982 stated in paragraph 3 that it "shall be signed with the corporate name, followed by the signature and title of at least two officers of the corporation * * *, in addition to which the corporate seal shall be affixed."

The return of the petitioner for the year ended in 1944 was signed and sworn to by its president and by its treasurer, and was impressed with the corporate seal. A filled-in Form 982 was signed by those same two officers and was bound to that return, along with a number of schedules and other papers. It did not bear the corporate seal of the petitioner.

The return of the petitioner for the year ended in 1945 was signed and sworn to by its president and by its treasurer and was impressed with the corporate seal. A filled-in Form 982 was bound to that return, along with a number of schedules and other papers. The Form 982 was unsigned and was not impressed with the seal. The name of the taxpayer was typed on the form immediately above the place provided for signatures, and immediately above that the following was typed in: "The attached statement marked 'Form 982 Statement' is an integral part of this consent." The statement referred to was bound to the return. Its effect was to state the taxpayer's belief

that it was not in receipt of any taxable income from the discharge of its bond indebtedness and, therefore, was not required to have the basis of its property reduced, but the consent was filed because the Commissioner had not yet acted upon this contention and the consent was to be effective if it should be determined finally that the provision of section 22 (b) (9) applied.

The return of the petitioner for the year ended in 1946 was signed and sworn to by its vice president and by its treasurer and was impressed with the corporate seal. A filled-in Form 982, signed by those same two officers and impressed with the corporate seal, was bound to the return along with a number of schedules and other papers. It bore a reference to a statement and had a statement attached to it similar to those described for 1945.

The return of the petitioner for the year ended in 1947 was signed and sworn to by its vice president and by its treasurer and was impressed with the corporate seal. A filled-in Form 982 was signed by those same two officers and was bound to that return along with a number of schedules and other papers. It did not bear the corporate seal of the petitioner. It bore a reference to a statement and had a statement attached to it similar to those described for 1945.

The Commissioner, in determining the deficiencies, held that the taxable income attributable to the discharge of indebtedness could not be excluded from taxable income and applied to reduce the basis of assets because of the petitioner's "failure to properly execute and file unconditional consents on Form 982 in accordance with Regulations 111, Section 29.113 (b) (3)."

The Commissioner, in his brief, does not refer to section 29.113 (b) (3) of Regulations 111. He makes no real argument based upon the conditions attached to the consents but merely says "the consents contain a condition which may very well have the effect of rendering them invalid." There was no statement attached to the 1944 consent. The statements do not render the other consents invalid. They merely call attention to the fact that if the gain on the redemption of the bonds is not income, there is no occasion for any consent or adjustment to the base, but clearly disclose that if there is any occasion for the consents, the petitioner wants them to be effective. The Commissioner makes no argument in his brief that the petitioner failed to file duplicates of Form 982, although the stipulation does not show that duplicates were filed. The petitioner in his requests for findings of fact states that "Form 982 in duplicate" was filed with and securely annexed to its returns for each of the taxable years. The Commissioner does not object to the quoted part of the request.

The Commissioner states that "The principal objection to the validity of the consents is that the forms were not executed by and on

behalf of the corporation in accord with the instructions contained in paragraph 3 printed on the back of the form." The form filed for the year 1946 met all of those requirements and the Commissioner makes no valid argument to support his determination on this point for that year. The forms for the other taxable years were not impressed with the corporate seal and that for 1945 was not signed by any officer. The petitioner argues that the forms filed for those years were sufficient to advise the Commissioner that it was making the election and consenting to the adjustment to the basis of its property, as it was allowed to do under sections 22 (b) (9) and 113 (b) (3), since any defects in the forms themselves were made up by the fact that those forms were securely bound into and made a part of the returns and the returns themselves were signed by two officers and impressed with the corporate seal, thus the signatures and seals on the returns were sufficient compliance with the requirements of the regulation and the instructions on the back of Form 982.

Obviously these forms were not executed in strict conformity with the instructions on the back of the forms. None bore the corporate seal, but it has been held that the absence of a seal from similar documents does not render them invalid. *Pictorial Printing Co.*, 12 B. T. A. 1407, reversed on other grounds 38 F. 2d 563; *William S. Doig, Inc.*, 13 B. T. A. 256; *Athens Roller Mills, Inc.*, 46 B. T. A. 1012, reversed on other issues 136 F. 2d 125. One bore no signature whatsoever. However, each served to put the Commissioner clearly on notice that the petitioner was claiming the benefits allowed it under section 22 (b) (9) and was consenting to the disadvantages imposed upon it under section 113 (b) (3). He points to no disadvantage to him or the revenues which has resulted or can result from the failure of the petitioner to comply strictly with the instructions. These Forms 982 were not filed separately with the Commissioner but were bound with the returns, and the intention of the petitioner was to make them a part of the returns. The returns were signed by two officers, were impressed with the seal, and also were sworn to by the officers who stated in the oath on each that that return, "including any accompanying schedules and statements," has been examined by him and was made in good faith pursuant to the Internal Revenue Code and the regulations issued thereunder. The objections of the Commissioner appear to be purely technical, they do not go to the substance of the consents, and no good purpose would be served by disregarding the consents. It is held, after taking into consideration all of the circumstances, that the consents were effective, as intended by the taxpayer, to exclude from its gross income the income attributable to the discharge of its indebtedness and to reduce the basis of its property by corresponding amounts.

The parties have stipulated that the operating loss for the year 1940 was omitted in computing the unused excess profits tax carryover to 1943. They disagree on the third issue only with respect to whether the agreed loss for the year ended in 1940 should be reduced by one-half of the interest on borrowed money. The Commissioner, relying upon section 711 (a) (2) (L) (i), argues that the loss should be reduced by 50 per cent of the interest charges. This same argument of his has been twice rejected by this Court, *Flory Milling Co.*, 21 T. C. 432, *North Star Woolen Mill Co.*, 22 T. C. 1237, in which it has respectfully declined to follow the decision in *National Fruit Products Co.* v. *United States*, 105 F. Supp. 658, affirmed per curiam 199 F. 2d 754, certiorari denied 345 U. S. 950, relied upon by the Commissioner. No adjustment to the interest deduction is proper in computing the net operating loss of the year ended in 1940 since no excess profits credit is computed or allowed for that year.

The petitioner was incorporated in December 1934 under the laws of California and acquired its property on June 1, 1935, pursuant to a court decree in a proceeding under section 77B of the National Bankruptcy Act. The proceeding was in the United States District Court for the Southern District of New York. The debtor, the Ambassador Hotel Corporation, was adjudged insolvent. Claims and demands in the total amount of $24,735,447.53 were filed against it. Claims were allowed without objection based upon indentures securing so-called Los Angeles Bonds, Eastern Bonds, and Debentures. The debtor had issued at a discount in 1927 $6,000,000 principal 6 per cent bonds, due March 21, 1943, secured by the Los Angeles property. The claims filed on those bonds in the court proceeding consisted of $5,820,000 of principal, $785,990.89 of accrued interest, and $10,476 of interest on interest. The Eastern Bonds were secured by two eastern hotel properties. The Debentures were unsecured. The Los Angeles property was not subject to the lien of the Eastern Bonds and the eastern properties were not subject to the lien of the Los Angeles Bonds. The court approved a plan of reorganization dealing only with the Los Angeles property. It held that the value of the Los Angeles property was substantially less than the amount of the indebtedness represented by the Los Angeles Bonds and the claims of other creditors on that property were worthless. The petitioner acquired the Los Angeles properties free of all prior liens and claims by issuing to the holders of the Los Angeles Bonds of Ambassador Hotel Corporation $5,820,000 principal amount of its 5 per cent bonds secured by the Los Angeles property and 58,200 shares of its stock under a voting trust agreement. The record does not show what became of the Ambassador Hotel Corporation and of its other properties, stockholders, and creditors.

The petitioner contends that it acquired the Los Angeles properties in a 77B proceeding under which no gain or loss was recognized under section 112 (b) (10) (B) and, consequently, it is entitled to deductions for the unamortized discount on the bonds of Ambassador Hotel Corporation, the debtor in the 77B proceeding. That reasoning is faulty. It has been held that a corporation receiving properties of another and becoming liable for the obligations of that other under the law as a result of a merger, consolidation, or the equivalent thereof, may deduct the unamortized discount at which the other corporation previously had issued bonds, the obligation of which was one of those for which the successor became liable. *Helvering* v. *Metropolitan Edison Co.*, 306 U. S. 522; *American Gas & Electric Co.* v. *Commissioner*, 85 F. 2d 527; *New York Central Railroad Co.* v. *Commissioner*, 79 F. 2d 247, certiorari denied 296 U. S. 563. The Ambassador Hotel Corporation which issued the bonds at a discount was not merged or consolidated into the petitioner. The petitioner did not result from a merger, a consolidation, or anything resembling either one. The petitioner did not assume the obligation on the bonds of Ambassador Hotel Corporation by operation of law or otherwise. It issued its own bonds as a part of the consideration for the transfer to it of the Los Angeles properties which the court in effect had held belonged to the holders of the Los Angeles Bonds of the Ambassador Hotel Corporation as opposed to ownership by the Ambassador Hotel Corportion, its stockholders, or other creditors. The petitioner is not claiming amortization of discount on its own bonds. The cases cited above are authority for the rule that the petitioner, under the circumstances here present, is not entitled to a deduction for the unamortized portion of the discount at which the Ambassador Hotel Corporation originally issued its bonds in 1927.

The petitioner cites and relies upon *Peabody Hotel Co.*, 7 T. C. 600. It was stated therein that one of the issues was whether the Commissioner had erred in disallowing claimed deductions for amortization of bond discount. However, the parties stipulated the amounts of the deductions for amortization of bond discount if it should be determined that the petitioner acquired its assets pursuant to a nontaxable reorganization or exchange, and that latter was the only question considered by the court. Furthermore, the petitioner in that case did not issue its bonds but assumed the obligation of the former debtor on the bonds which the former debtor had issued at a discount. That case is thus distinguishable from the present case, and if it is contrary in any way to the other cases cited above on this point it would be in error in varying from them. Decision on this point is for the Commissioner.

*Decision will be entered under Rule 50.*