OPINION. Atkins, Judge: The only question remaining for decision is whether in 1945 the petitioner sustained a deductible loss in the amount of $650,000, the basis of its membership in the AP. On June 18, 1945, .the Supreme Court held that the bylaws of the AP regarding the admission to membership of applicants who would be in competition with existing members were in restraint of trade, and subsequently on November 28, 1945, the AP amended its bylaws to eliminate the discriminatory provisions. Section 23 (f) of the Internal Revenue Code of 1939 provides that in computing net income there shall be allowed as deductions “In the case of á corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.” Pertinent provisions of Regulations 111 are set forth in the margin.[1] We have previously been called upon to decide a similar question in Reporter Publishing Co., 18 T. C. 86, affd. Reporter Publishing Co. v. Commissioner, (C. A. 10) 201 F. 2d 743, certiorari denied 345 U. S. 993. There the taxpayer had an AP membership which had cost $79,734.67. After the Supreme Court decision in 1945, the taxpayer reduced the book value of its membership to $50,000 and claimed the difference as a deduction in its return. In the litigation before this Court the taxpayer contended that the full cost should be allowed as a deduction. It continued to use such membership in its business. We there held that the taxpayer sustained no deductible loss, pointing out that there had been no sale or other disposition of the AP membership and that the taxpayer still owned and used it in its newspaper business. We concluded that the mere fact that there was a reduction in sales value was not sufficient to justify the deduction of any amount as a realized loss. We there relied upon Consolidated Freight Lines, Inc., 37 B. T. A. 576, affd. (C. A. 9) 101 F. 2d 813, certiorari denied 308 U. S. 562. In that case the taxpayer had purchased a certificate of necessity under a State statute which was a prerequisite to entering business and in effect conferred monopolistic rights. The legislature subsequently took away only the monopolistic aspect of the certificate rights. The taxpayer was denied a deduction in that case because its right to stay in business continued under the franchise despite the removal of the monopolistic feature. In Reporter Publishing Co. v. Commissioner, supra, in affirming the decision of this Court, the Court of Appeals referred with approval to the regulations which we have quoted in the margin, and held that a deduction may be allowed only when there is a closed transaction during the taxable year, generally evidenced by the sale of the asset or abandonment of the asset as completely worthless. The court stated: The best evidence of value is found in the fact that appellant continues to use the membership in the same way and with the same benefits as before the decision by the Supreme Court. * * * so long as the membership is being retained and used in the business, in the same way, for the same purposes and with the same beneficial results, it cannot be said to have no value. The court cited several cases, including Commissioner v. McCarthy, (C. A. 7) 129 F. 2d 84, in which it was stated: The rule to be deduced from the “abandonment” cases, we think, is that a deduction should be permitted where there is not merely a shrinkage of value, but instead, a complete elimination of all value, and the recognition by the owner that his property no longer has any utility or worth to him, by means of a specific act proving his abandonment of all interest in it, which act of abandonment must take place in the year in which the value has actually been extinguished. * * * For the same reasons stated in Reporter Publishing Co., supra, we think the deduction must also be denied in the instant case. It is true that prior to the Supreme Court decision and the 1945 amendments to the AP bylaws the petitioner had an asset which could be sold for a substantial sum, because of the monopolistic character of the membership. The petitioner had the right, in the event of the admission of a new competing member to receive a portion of the substantial payment required of such new member. In addition, the membership was valuable for purposes of obtaining credit. After the Supreme Court decision and the amendment to the bylaws the value of the membership in these respects disappeared. However, such loss in value was not realized in 1945 for tax purposes by a sale or other identifiable event. Furthermore, the petitioner did not acquire the AP membership for the purpose of sale or to obtain credit. The evidence shows that it originally acquired the membership for the purpose of obtaining the AP news service. Indeed, the bylaws required that each member subscribe for an AP service and print the news in a regularly published newspaper, thereby precluding the holding of a membership merely as an investment. Such news service was valuable in the petitioner’s business and continued to be valuable therein after the Supreme Court decision and the amendments to the bylaws. This right to obtain the news service, which was inherent in the membership, was not affected by either the Supreme Court decision or the change in the bylaws in 1945. The petitioner retained its membership and continued to obtain the valuable news service to which its membership entitled it. It therefore cannot be said that the useful value of this asset in the petitioner’s business terminated in 1945. It did not become worthless within the intendment of the statute and the regulations. The petitioner contends that the decision in Reporter Publishing Co., supra, is not a governing precedent in the instant case. It states that the only issue raised there was whether a loss was sustained as a result of the Supreme Court decision, and that no contention was there made, as is made in the instant case, that the membership lost all of its value by virtue of changes in the bylaws voluntarily made by the AP, not required by the Supreme Court decision, which granted to any qualified newspaper the privilege of obtaining membership and the news service without the payment of any initial charge. In the first place, we have no evidence in the instant case that prior to the change in the bylaws in 1945 there was any initial charge upon new members except that imposed upon those who would be in competition with an existing member. As we read the Supreme Court decision it required the elimination of that charge since it was one of the onerous burdens which the Court considered as being in restraint of trade. Be that as it may, we do. not think that the result in the Reporter Publishing Co. case would have been different in any event, since the basic rationale of that case was that the membership did not become worthless as an asset in the petitioner’s business and was not abandoned. The petitioner makes a point of the fact that the 1945 amendments to the bylaws contemplated that the old members should enter into a contract for the news service and that the petitioner did enter into a “new” contract, and claims that this constituted an identifiable event establishing a loss. Such contract is not in evidence and we do not know its terms. Nor do we know whether the petitioner had a written contract for the news service prior thereto. But these matters are not important in the view we take. A clear distinction should be made between the membership and any contract for news service. Each member has always been required to take a news service and publish the news, but membership was, and continued to be, a prerequisite to the right to the news' service. The petitioner continued throughout 1945 to hold and use its membership to obtain the AP news service. We have carefully considered the contentions of the petitioner and the authorities cited, but no authority, either statutory or judicial, has come to our attention which would justify or require the allowance of a deduction in these circumstances. The petitioner has cited cases in which losses have been allowed on account of worthlessness of assets used ip business, but in each case it was clearly shown that the assets had lost their useful value in the business. It has also cited cases involving deductions on account of worthlessness of investment properties. However, as indicated hereinabove the asset with which we are concerned here is not an investment asset, and those cases have no bearing here. We hold that the petitioner is not entitled to the deduction which it claims. At the hearing the respondent, on the basis of Flory Milling Co., 21 T. C. 432, affd. (C. A. 3) 222 F. 2d 903, conceded that petitioner’s net operating loss of 1948 should not be reduced by 50 per cent of the interest paid that year on borrowed capital in applying section 711 (a) (2) (L) (i) of the Internal Revenue Code of 1939 to the year 1946. On brief, the respondent also concedes that the petitioner is entitled to deductions of $4,000 in 1944 and $14,000 in 1945, paid in those years to the widow of Richard H. Titherington, a former officer of the petitioner. These concessions will be reflected in the computation under Rule 50. In the original stipulation it is stated that all other issues between the parties have been resolved. Decision will he entered under Rule 60. Section 29.23 (f)-1 of Regulations 111, provides : Losses by Corporations. — Losses sustained by domestic corporations during the taxable year and not compensated for by insurance or otherwise are deductible in so far as not prohibited or limited by sections 23(g), 23(h), 24(b), 112, 117, 118, and 251. The provisions of sections 29.23(e) — 1 to 29.23(e) — 5, inclusive, and section 29.23(i) — 1 are in general applicable to corporations as well as individuals. * » * Section 29.23 (e)-l of Regulations 111, provides in part as follows : Losses by Individuals. — * * * In general losses for which an amount may he deducted from gross Income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Full consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained. * * * Section 29.23(e)-3 of Regulations 111, as amended by T. D. 6458, approved June 15, 1945, reflecting only minor changes in the regulations which had previously existed, provides in part as follows: Loss op Useful Value. — When, through some change in business conditions, the usefulness in the business of some or all of the assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in such business, he may claim as a loss for the year in which he takes such action the difference between the basis (adjusted as provided in section 113(b) and sections 29.113(a) (14)-1 and 29.113(b) (1)-1 to 29.113(b) (3) —2, inclusive) and the salvage value of the property. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property has been prematurely discarded, as, for example, where an increase in the cost or change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible. This exception does not extend to a case where the useful life of property terminates solely as a result of those gradual processes for which depreciation allowances are authorized. It does not apply to inventories. The exception applies to buildings only when they are permanently abandoned or permanently devoted to a radically different use, and to machinery only when its use as such is permanently abandoned. Any loss to be deductible under this exception must be fully explained in the return of income. The limitations provided in section 117 with respect to the sale or exchange of capital assets have no application to losses due to the discarding of capital assets.